# Steven Clayton v. Debra Clayton

[569 A.2d 1077]

No. 88-517

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed November 17, 1989

*Caldbeck & Schweitzer,* Shelburne, for Plaintiff-Appellant.

*Norman C. Smith* of *Bergeron, Paradis, Coombs & Fitzpatrick,* Burlington, for Defendant-Appellee.

**Gibson, J.** Plaintiff husband appeals from a trial court order granting child support and distributing the property of the parties. We affirm.

The parties met while in high school and were married in October of 1979. Plaintiff was working at the time in the family business, the Shelburne Supermarket, and had been the man-

ager of the store since March, 1979. The parties have one child, Mallory, born in 1985. Plaintiff, who filed for divorce in January of 1987, continues to work at the family business; at the time of the hearing, defendant was working in the produce section of another food store.

About seven months before the marriage, plaintiff entered into an agreement with his parents under which he would obtain a 50.5 percent interest in the stock of the family business, Shelburne Supermarket, Inc., in exchange for certain promissory notes. Plaintiff received a bill of sale for his interest, but the stock itself was never issued. Plaintiff was nevertheless treated as the majority stockholder and became the president of the corporation. He received 50.5 percent of the profits of the store and paid income taxes on that amount. Defendant was unaware of the terms of the agreement between plaintiff and his parents, which also provided that the stock was sold with the understanding that it was always to be considered the personal property of plaintiff and not as joint property in the event of his marriage. Throughout the marriage, plaintiff maintained his payments under the promissory notes he had given his parents, and none were in default at the time the parties separated.

Despite plaintiff's majority stock ownership, he followed his father's wishes with respect to the business. When he raised his salary by $100 a week in 1987, his father directed him to rescind the increase, which he did. The court found that in July of 1987, at the instruction of his father, plaintiff signed a waiver of notice for a special meeting of shareholders of Shelburne Supermarket, Inc., along with a notice of resignation as a director and president of the corporation. On the same date, his parents marked the agreement with their son void for failing to honor a provision restricting the transfer of stock. The court found, however, that there was no evidence that plaintiff had attempted to transfer any of the corporation's shares. The court further found that a substantial part of plaintiff's income came from a lease to the corporation of the store building, which he owned, at a rental of $3,000 per month. At the time of the parties' separation, the lease had several years to run, but was ex-

tended at the direction of plaintiff's father for an additional twenty years at the same rental.

Plaintiff also held stock in Clayton Investments, Inc., a family real estate holding company. After the parties' separation, plaintiff, at his father's direction, transferred his interest, then valued at more than $40,000, to his sister in consideration of a $5,000 promissory note.

The trial court concluded:

> There is no question and the evidence fully supports the conclusion that all of the transactions which occurred subsequent to the parties' separation would not have taken place but for the fact that Plaintiff had filed for divorce and his father did not want Plaintiff's wife to have any share in any of the assets of the various businesses. The net result of these transactions was to reduce the size of the marital assets and to diminish Plaintiff's income, thereby directly affecting his liability for child support and separate maintenance and Defendant's share of the marital assets.
>
> The Plaintiff cannot, after the separation of the parties, voluntarily reduce his income and assets so as to deprive his child of appropriate support and his wife of a fair division of the assets brought to and accumulated during the marriage. The [Plaintiff] cannot benefit legally from his acquiescence in his father's manipulations of the parties' assets[,] especially where, as here, there appears no rational business purpose.

The court noted that it had difficulty fixing a value on plaintiff's properties because of disparities between the financial statement plaintiff submitted in response to defendant's discovery request and financial statements he had prepared in connection with certain bank loans. The disparities were so great that the court ordered an independent appraisal of plaintiff's properties. Based on all of the evidence on valuation, and disregarding transactions that it regarded as self-serving, the trial court found that plaintiff and defendant had acquired as marital assets a total net equity of $281,486 in the stock of Shelburne Supermarket, Inc. and the store building, and a $42,362 net equity in Clayton Investments, Inc. Adjusting plaintiff's annual

income to reflect a proper allocation of profits from the supermarket in 1987, the court found that plaintiff's combined net income in 1987 would have been approximately $94,000.

The court awarded plaintiff "[a]ll of the stock in Shelburne Supermarket, Inc. to which he may be legally entitled," all of his interest in the lease to the corporation, all of his interest in Clayton Investments, Inc., the condominium he then owned, and his personal property. The court valued the total award to plaintiff at $324,000, not including any appreciation in the asset value of either of the two corporations or in the building owned by him and leased to Shelburne Supermarket, Inc.

The court awarded defendant the condominium she then owned, the personal property in her possession, and the proceeds of a $12,000 escrow account resulting from the sale of the parties' home, for an aggregate valuation of approximately $109,000.

Noting the disparity in these initial awards, the trial court ordered that plaintiff pay defendant the sum of $100,000, either in cash or by promissory note bearing ten percent interest, providing for level-term monthly payments of $1,074.[1] In addition, the court ordered child support in the amount of $1,020.60 per month.

On appeal, plaintiff's major argument is that the trial court erred in basing its decision as to child support and property distribution on its finding that plaintiff owned 50.5 percent of the stock of the family business at the time of the parties' separation. Plaintiff faults the trial court for its failure to give any weight to the contract between plaintiff and his parents, under which the parents sought to recapture plaintiff's interest in the business when it appeared that his interest was being alienated.[2]

---

[1] Though the trial court order does not so indicate, the term of such note appears to be about fifteen years.

[2] Plaintiff's brief sets forth the goals of the agreement with his parents and makes the purpose of the agreement completely clear:

Plaintiff's parents were concerned that if they conveyed stock outright to their son, it may be considered as a major asset of Plaintiff or any future spouse (Request to Find 13); they wanted the stock to be available only to

■ Plaintiff erroneously contends that the court ignored the evidence supporting his position. It is plain from its findings that the trial court considered and understood every aspect of the arrangements between plaintiff and his parents. The court did not ignore evidence, but properly decided to disregard an agreement that would have conveyed marital assets in contemplation of divorce in return for little or no consideration. Such an agreement has long been contrary to public policy and unenforceable as a fraudulent transfer. See *Becker v. Becker*, 138 Vt. 372, 374–75, 416 A.2d 156, 159 (1980); *Nichols v. Nichols*, 61 Vt. 426, 430, 18 A. 153, 154 (1889); see also *Culver v. Culver*, 133 Vt. 191, 194, 332 A.2d 799, 801 (1975) (husband who had transferred $56,000 in savings account money to his mother in her name during divorce proceeding could not successfully raise impossibility of performance as a defense or excuse for not complying with property settlement).

*Becker* and *Nichols* were decided under Vermont's statutory prohibition against fraudulent transfers, 9 V.S.A. § 2281, which provides in relevant part:

> Fraudulent and deceitful conveyances of houses, lands, tenements or hereditaments . . . made or had to avoid a right, debt or duty of another person, shall, as against the party only whose right, debt or duty is attempted to be avoided, his heirs, executors, administrators and assigns, be null and void.

The present case does not arise directly under this statute, since there was no attempt by defendant to seek a declaration that any purported conveyances from plaintiff to his parents were fraudulent, and the parents were not named as third-party defendants. It was the court's duty to consider the bona fides of

Plaintiff and their other children, so providing in a written agreement (14); Plaintiff's parents intended that benefits of ownership accrue only to their children, and that none of these benefits be lost through a divorce (15); all transactions between Plaintiff and his parents were in an effort to recognize their written agreement and fundamental understanding relative to the business stock, and to enforce the terms of this agreement vis-a-vis Plaintiff's parents, Plaintiff and Defendant (16); the written agreement between Plaintiff and his parents was to insure that the family business stock remain in the family (18).

the transfers from plaintiff to his parents in assessing "the financial resources . . . of the noncustodial parent" under 15 V.S.A. § 659(a)(7) and "the value of all property interests . . . of each party" under 15 V.S.A. § 751(b)(6). Plaintiff was free to present evidence that the conveyances to his parents were bona fide and not undertaken for the purpose of diminishing the value of the marital estate, but he did not do so. Instead, he presented evidence of a contract expressly designed to insulate certain assets of plaintiff from any claims that plaintiff's spouse might make.

The fundamental issue was not the one posed by plaintiff—whether he and his parents had a "meeting of the minds." Clearly they did. The problem was that they were mistaken in believing that such an agreement could effectively diminish his marital estate.[3] *Lynch v. Lynch*, 147 Vt. 574, 576, 522 A.2d 234, 235 (1987) ("it does not matter whether the property is held separately, jointly, or as tenants by the entirety; all property owned by either of the spouses is subject to distribution").

The instant case is similar to *Wallace v. Wallace*, 291 S.E.2d 386 (W. Va. 1982), where, between the first and the final separations of the couple, the husband transferred stock back to his parents. The husband contended that the business his father had worked to build should not be included in his wife's support award. The court held that

> by common law or statute, [the wife] must only prove that [her husband] intended to diminish his estate, to frustrate her use thereof for calculating support money. Intent to deprive is *per se* fraud; and proof of such intent establishes a fraudulent conveyance.

*Id.* at 388; see also *Pappas v. Pappas*, 164 Conn. 242, 249, 320 A.2d 809, 811 (1973) (husband, in order to keep property from wife, transferred it for no consideration and with intent that the

---

[3] Plaintiff contends in the alternative that the trial court should nullify the agreement he and his parents entered under a mutual mistake of fact. Whether the mistake was one of fact or law, the argument does not advance plaintiff's cause. The trial court ruled the agreement ineffective in reducing plaintiff's net worth, even though the enforceability of the agreement inter sese was not before the court.

property be deeded back to him following the divorce, then testified falsely in divorce proceeding that the transfer was absolute and for good consideration; his fraud on the court barred the transfer back to him through the imposition of a constructive trust); *Colburn v. Colburn*, 15 Md. App. 503, 516, 292 A.2d 121, 129 (1972) (where husband resigned job and sold his stock in order to reduce his income and fraudulently deprive his wife of alimony, trial court properly considered his former salary and stock holdings in determining husband's wealth and earning capacity at time of divorce). See generally Annotation, *Gift or Other Voluntary Transfer by Husband as Fraud on Wife*, 49 A.L.R.2d 521 (1956).

Plaintiff next argues that the trial court erred in failing to consider and weigh the factors set forth in 15 V.S.A. § 751 relating to property distribution, specifically, the source and amount of income of each of the parties (§ 751(b)(3)) and the party through whom the property was acquired (§ 751(b)(10)). The argument amounts to a reassertion that the major source of the parties' marital estate was plaintiff's parents, the same point that plaintiff pursued in pressing the merits of his agreement with his parents over the stock of Shelburne Supermarket, Inc. Again, the trial court fully and clearly understood that plaintiff and his parents intended that the property "remain in the immediate Clayton family." The court found that there was no evidence that plaintiff attempted to transfer stock in violation of the agreement, but rather that plaintiff had fully complied with all the terms and conditions of the agreement. Further, the court concluded that plaintiff could not legally benefit from voluntarily reducing his income and assets where there appeared to be no rational business purpose and where the result would be in derogation of the rights of his wife and child. The court's conclusion was well founded. See *White v. White*, 133 Vt. 614, 616, 349 A.2d 894, 896 (1975) (in making property distribution, court could properly take into account husband's transfer of 120 acres of land to his mother for no consideration after divorce proceedings had begun); see also *Hendrick v. Hendrick*, 142 Vt. 357, 361, 454 A.2d 1251, 1253 (1982) (trial court erred in not apportioning party's interest in a

corporation even though a contract precluded stockholders from selling or withdrawing shares without first offering the stock to each other).

■■ Finally, plaintiff contends that the trial court abused its discretion in the child support award and property distribution because it ignored the potential effect of the agreement between plaintiff and his parents, resulting in a great reduction in his assets and earning capacity. This argument sounds the same theme as plaintiff's previous two arguments, namely, that his agreement with his parents should be effectively honored and substantially considered in weighing the interests and equities of the parties. Any difficulty, however, that plaintiff may encounter in paying the award because of the reduction in his assets is not a proper defense or excuse for not complying with the court's order. See *Culver*, 133 Vt. at 194, 332 A.2d at 801. Whatever may ensue from potential litigation between plaintiff and his parents, the trial court found with considerable support in the record that plaintiff and his parents purposefully undertook steps to diminish the marital estate in order to deprive defendant of an equitable share of that estate.[4] If we were to allow an asserted dispute between plaintiff's parents and himself to influence the property division or the child support award, we would enable plaintiff to achieve indirectly what we have directly barred by the present decision.

*Affirmed.*

---

[4] Plaintiff's parents were not party to this action. At this point there has been no action against them by defendant under 9 V.S.A. § 2281 to compel rescission of the reconveyance of the stock of the family business, which has been awarded to plaintiff in the property division. Plaintiff's parents are free to seek enforcement of the agreement with their son, but even if enforced, that agreement would have no impact on the present order.