## Agway, Inc. v. John H. and Mark Brooks d/b/a Brooks Farm

[790 A.2d 438]

No. 00-407

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 28, 2001

*James C. Foley, Jr.*, of *Deppman & Foley, P.C.*, Middlebury, for Plaintiff-Appellee.

*Craig Weatherly* of *Gravel and Shea*, Burlington, for Defendants-Appellants.

**Amestoy, C.J.** Plaintiff Agway, Inc. filed an action in Franklin Superior Court against defendants John H. Brooks and Mark Brooks, owners of Brooks Farm, Inc., seeking to recover amounts due from the Brooks Farm, Inc. account.[1] Following a bench trial, the court found in favor of plaintiff and entered judgment against defendants, personally, for the debt of the corporation as well as prejudgment interest and attorney's fees. On appeal, defendants argue that the trial court erred in piercing the corporate veil and in awarding plaintiff attorney's fees and prejudgment interest at the rate of 15%. We affirm the court's judgment as to defendants' liability for the debts of Brooks Farm, Inc., but reverse the award of attorney's fees and prejudgment interest.

Plaintiff is a farm feed, fertilizer and tool supplier with retail locations in Vermont. In 1981, plaintiff began supplying feed to John and Mary Brooks, for their dairy farm in St. Albans Bay. Plaintiff

---

[1] Plaintiff originally filed suit against Mary Brooks, but the trial court dismissed the case against her in its July 12, 2000 findings and order.

provided credit to John and Mary Brooks, using a commercial credit agreement that listed the Brooks as owners of a 225 acre farm (with an annual equity value of $300,000), farm equipment, a truck, and a car. This agreement was signed in 1982 and annually thereafter with the last agreement in 1987, and the last billing on this account in May of 1998.

In 1993, John Brooks and his brother, Mark Brooks, formed the "Brooks Brothers Farm" partnership, and appointed John Brooks as the managing partner. At approximately the same time, John Brooks formed a corporation called "Brooks Farm, Inc." owned by the "Brooks Brothers Farm" partnership. John Brooks served as the president and managing director of Brooks Farm, Inc., which issued fifty shares of stock to each of the brothers.

In 1994, plaintiff began supplying feed under a separate account to Brooks Farm, Inc. The account had originally been opened by Brooks Farm in 1984 with no separate credit agreement. In 1994, a credit manager for plaintiff reviewed this account. The credit manager was unable to find a credit application, and he therefore had "Inc." deleted from the account. From 1994 until April of 1998, plaintiff supplied and delivered approximately $45,000 worth of feed and beet pulp per month, under the Brooks Farm account, to John and Mary Brooks's farm.

In October of 1998, plaintiff filed suit against John and Mary Brooks, and later Mark Brooks, as individuals, seeking the balance on the Brooks Farm account as of June of 1998 — approximately $154,000 — plus interest. Defendants answered the complaint claiming that the debt belonged to the corporation and the suit against them as individuals should be dismissed. The court held a bench trial on January 24, 2000. The court dismissed Mary Brooks as a party but found John and Mark Brooks individually and jointly liable for the $154,000 debt, 15% prejudgment interest and attorney's fees.

In concluding that defendants had failed to respect the corporate form, the court noted that John, Mary, and Mark Brooks owned the major business assets, including the land, livestock, farm buildings, and equipment; and that the corporation owned no assets or leases of any real value. Further, the court determined that John Brooks had moved money between his business and personal account without corporate resolutions or documentation, loaned money from the corporation without notes and repaid them with receipts. The court

did not find fraudulent intent; but rather determined that John Brooks had failed to "make a distinction between John Brooks the person, and John Brooks as president and managing director of Brooks Farm, Inc." The court concluded that John Brooks had "purposely set up the corporation without assets and ran it without a profit"; had created an undercapitalized corporation with the intention of isolating any business debt from his personal assets; and consequently had given plaintiff the reasonable belief that John and Mark Brooks were acting on their personal behalf rather than on behalf of a corporation. Finally, the court found that the 15% prejudgment interest and attorney's fees were reasonable and that defendants had notice of these provisions by virtue of the commercial credit agreements signed by John and Mary Brooks for their personal accounts with plaintiff.

I.

Our standard when reviewing a trial court's findings of fact and conclusions of law is limited. *Rubin v. Sterling Enters.*, 164 Vt. 582, 588, 674 A.2d 782, 786 (1996). We will view factual findings in the light most favorable to the prevailing party and will overturn such findings only where there is no credible evidence to support them, not merely where the findings are contradicted by substantial evidence. *Id.*

A corporation is a legal construct, limited to the powers given it by the sovereignty that creates it, *Vt. Accident Ins. Co. v. Burns*, 114 Vt. 143, 146, 40 A.2d 707, 709 (1944), and generally independent of the individuals who own its stock even when it is owned by a sole shareholder. *Roberts v. W.H. Hughes Co.*, 86 Vt. 76, 88, 83 A. 807, 812 (1912). Although shareholders are not generally liable for the debts of the corporation, shareholders can be held liable where the corporate form has been used to perpetrate a fraud or to shield the shareholders' assets against legitimate claims of a creditor. See *Winey v. Cutler*, 165 Vt. 566, 567, 678 A.2d 1261, 1262 (1996) (mem.); *Roberts*, 86 Vt. at 88, 83 A. at 812; see also 11A V.S.A. § 6.22.

The court will look beyond the corporation to its shareholders for liability, that is, pierce the corporate veil, where the corporate form has been used to perpetrate a fraud, *id.*, and also where the needs of justice dictate. See *In re Vt. Toy Works, Inc.*, 135 B.R. 762, 770 (D. Vt. 1991) (Vermont courts will pierce the corporate veil where necessary to prevent fraud or injustice). Although an

individual will not be held liable merely because he owns all the stock of the corporation, "in an appropriate case, and in furtherance of the ends of justice, a debtor corporation and the individual owning all its stock and assets will be treated as identical, independent of any question of fraud." *Roberts*, 86 Vt. at 88, 83 A. at 812. In cases not involving fraudulent activity, the court will look to the facts and circumstances of each case to determine whether the corporate veil should be pierced in the interests of fairness, equity, and the public need. *In re Vt. Toy Works, Inc.*, 135 B.R. at 770 (corporate veil can be pierced to prevent injustice where shareholder has made personal use of corporate funds, where corporation is undercapitalized and where corporate formality has been entirely ignored).[2]

■ In this case, although the trial court did not infer that defendants acted with fraudulent intent, the court found that the distinct corporate identity of Brooks Farm, Inc. was never respected. Our review of the record upon which the trial court based its findings supports its most critical determinations, including that Brooks Farm, Inc. had nothing of value, that there was no credible evidence of arms length negotiations or lease arrangements for business assets of the corporation notwithstanding corporate resolutions to that effect; that the corporation "acted as a checkbook" to run milk payments through to creditors, that corporate account deliveries were often paid with John Brooks's personal credit cards, and that loans were made to and from the corporate account without notes and paid with receipts. In sum, the evidence viewed in the light most favorable to the prevailing party is a sufficient basis for the trial court's finding that defendant John Brooks purposely undercapitalized Brooks Farm, Inc. with the intention of isolating his debt from business and personal assets.

■ While it is doubtful that the court would have equitable cause to pierce the corporate veil merely because a closely held corporation did not follow corporate formalities, "[e]quity . . . will not blindly accept mere corporate form over the actual substance of the transactions involved." *In re Vt. Toy Works, Inc.*, 82 B.R. 258, 305 (D. Vt. 1987) (citing *Chicago, Milwaukee & St. Paul Ry. v. Minneapolis*

---

[2] See also R. B. Thompson, *Piercing the Corporate Veil: An Empirical Study*, 76 Cornell L. Rev. 1036, 1039 (1991) (the question of veil piercing is contextual); S. M. Bainbridge, *Abolishing Veil Piercing*, 26 J. Corp. L. 479, 509 (2001) (most jurisdictions do not provide a bright line standard but rather compare the facts of the case to a laundry list of factors).

*Civic & Commerce Ass'n*, 247 U.S. 490, 501 (1918)), *rev'd on ground of insufficient evidence*, 135 B.R. at 773. In this case there was substantial evidence of not only a lack of corporate formality, but more significantly, of the fact that Brooks Farm, Inc. was a mere corporate strawman for the Brooks Brothers Farm partnership and John and Mark Brooks's personal businesses — without assets, capital, or purpose beyond evading contract liability. We will uphold a trial court decision to pierce the corporate veil where it has done so, as in this case, to correct the use of the corporate form to evade legitimate claims of judgment creditors. See *Winey*, 165 Vt. at 568, 678 A.2d at 1263.

## II.

■ Defendants contend that the trial court erred in granting 15% prejudgment interest and attorney's fees to plaintiff. We recently articulated Vermont's standards for awarding attorney's fees in *DJ Painting, Inc. v. Baraw Enterprises, Inc.*: "[w]e apply the 'American Rule' with regard to attorneys' fees, which means that parties must bear their own attorneys' fees absent a statutory or contractual exception." 172 Vt. 239, 246, 776 A.2d 413, 419 (2001) (citing *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 558, 508 A.2d 689, 692 (1986)). Nevertheless, *DJ Painting, Inc.* also noted that, in a case where neither statutory nor contractual terms dictate, courts may award fees on an equity basis in exceptional circumstance where the needs of justice dictate. *Id.* (citing *In re Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939)). Such exceptional cases include those instances where a party to the action behaves in bad faith, or with vexatious intent. *Cameron v. Burke*, 153 Vt. 565, 576, 572 A.2d 1361, 1367 (1990).[3]

The trial court order contains no mention of either exceptional circumstances or vexatious acts. Instead, the trial court ordered defendants to pay attorney's fees based on the fact that John Brooks had understood and agreed to such terms in his dealing with plaintiff over the years, and therefore fell under the contractual exception to the general rule that parties bear their own expenses. The trial court

---

[3] Defendants contend that attorney's fees are only awarded in exceptional circumstances or where the court pierces the corporate veil based on the alter ego doctrine, citing *Winey v. Cutler*, 165 Vt. at 567-68, 678 A.2d at 1262-63. When we upheld the award of attorney's fees in *Winey*, however, we cited previous decisions holding that a court may grant attorney's fees "in exceptional cases as justice requires," and did not rely on the alter ego doctrine in affirming the award. *Id.* at 567-68, 678 A.2d at 1263.

stated in its findings, "[c]learly John Brooks bears personal responsibility for the debt. . . . He understood the terms and conditions of the [commercial credit] agreements to include interest charges and attorney['s] fees. He agreed to those terms and conditions as a corporation. . . . The Court will personally hold him to those conditions." Plaintiff argues that both the tallies, generally signed by the buyer at the time of delivery, and the commercial credit agreements, which defendant John Brooks signed for his personal accounts, are evidence of the fact that the corporation agreed to the interest and attorney's fees terms.

The tallies are not sufficient to bind the corporation to the terms specified on the back side, including provisions for attorney's fees and interest. Generally, tallies or receipts are not contracts and therefore do not stand as the exclusive evidence of the parties' intentions. *Drown's Guardian v. Chesley's Estate*, 92 Vt. 19, 23, 102 A.102, 103 (1917). In this case, there can be no doubt that the tallies were not intended to be contracts. Many of the tallies representing the feed deliveries which make up the balance due on the Brooks Farm account were left at the farm unsigned if no one was available at the time of delivery.

In contrast, the commercial credit agreements used by plaintiff did create a binding agreement with respect to attorney's fees and interest charges, but that agreement was with John Brooks for his personal account. The trial court declined to attach the commercial credit agreements that John Brooks had signed for his personal accounts to the Brooks Farm account:

> Agway must bear responsibility for its own record keeping. Those agreements attach to a separate and current account. . . . The Court finds that Agway did contract with the Brooks Farm, Inc. for the feed in question. But, the Court has not recognized the corporate status. Thus the liability attaches to those who owned and managed the corporation at the time in question.

Insofar as the Court found that plaintiff cannot attach liability through commercial credit agreements on John Brooks's personal account, we agree. Plaintiff was aware that the Brooks Farm account had signed no commercial credit agreement, and we concur with the trial court that it falls on plaintiff to require customers to sign a commercial credit agreement if it intends to hold them to the terms therein.

While the trial court did not impose liability through John Brooks's personal account, it found that he had agreed to the interest and attorney's fees terms as a corporation by imputing Brooks Farms, Inc. with the knowledge of those terms contained in the commercial credit agreements signed on the personal account. This was error. The relevant question is not whether John Brooks, and therefore the corporation, had knowledge of those terms; or whether John Brooks agreed to those terms; it is whether the corporation contractually agreed to them. The trial court found that the corporate account had not filed a commercial credit agreement. Because the trial court found Brooks Farm, Inc. to be the contracting party on the debt owed, and found defendants liable through piercing the corporate veil, defendants' liability for the debt on the corporate account is limited to that for which the corporation was liable. See *Morris v. Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993) ("The concept [of piercing the corporate veil] is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed. . . . Thus, an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation . . . .").

 The evidence does not support the conclusion that Brooks Farm, Inc. contractually agreed to pay 15% prejudgment interest and attorney's fees, nor did the court find that defendants acted vexatiously or in bad faith. Absent evidence to support such findings we apply the American Rule, and plaintiff therefore must bear its own attorney's fees.

*The court's judgment as to the defendants' liability for the debts of Brooks Farm, Inc. is affirmed. The award of attorney's fees and prejudgment interest of 15% is reversed.*