NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 70

No. 2016-302

| | |
|---|---|
| Michael Collins | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Family Division |
| | |
| Lynn B. Collins | March Term, 2017 |

Robert R. Bent, J.

William P. Neylon, St. Johnsbury, for Plaintiff-Appellee.

Deborah T. Bucknam of Bucknam & Black, P.C., St. Johnsbury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **ROBINSON, J.**   This case calls upon us to consider the effect in a divorce case of a grantor's amendment to a revocable trust that changed the beneficiary from husband to husband's son, thereby keeping the trust property out of the marital estate and shielding it from wife's claims. Wife appeals the family division's final property division award. In particular, she challenges the trial court's refusal to enforce a subpoena requiring grantor father to testify about the trust and his capacity to change its beneficiary and argues that the family court should have included the trust assets as part of the marital estate. We affirm.

¶ 2.     The material facts are as follows. The parties married in 1984 and have two children, both of whom are now adults. The parties earned comparable incomes during their marriage. Their primary asset is their marital home, which the parties stipulated is valued at $140,000. Each party has two retirement accounts, which are roughly equal in net value after

considering loans, and wife has a vested inheritance from her mother's estate of around $4000. Lastly, wife owes $16,000 for a student loan executed on behalf of the parties' son.

¶ 3.     At issue in this appeal is the status of a revocable trust that husband's parents established in 1999.  The parents placed their real estate properties in the trust, which included their house—located near the parties' marital home—and a camp at a lake in Barnet.[1]  The parents named themselves as trustees and husband as the sole beneficiary; husband would become a successor trustee when either of his parents became unable to act as trustee.  The trust document provided that the grantors could amend the trust at any time, and that upon the death of both grantors, the trust could not be amended or revoked and the trustee would distribute the trust assets to the beneficiary.  The trust also contains a Certificate of Deposit (CD) that was valued at around $38,000 at the time of the last hearing and a savings account.  The parties used the trust's CD to secure a $38,000 loan for themselves.

¶ 4.     Father moved in with the parties following the death of husband's mother in 2011; husband and wife jointly cared for him.  The parties separated in early 2014, and husband filed for divorce in April of that year.  About two years after the parties separated, husband moved into his parents' house with father.  Father's health declined over the course of the divorce proceedings. When the family court held a status conference in January 2015, father was living in a rehabilitation center.

¶ 5.     At that January 2015 status conference, the parties discussed the parents' revocable trust and considered the relevance of this Court's decision in Billings v. Billings, 2011 VT 116, ¶ 23, 190 Vt. 487, 35 A.3d 1030, and the Legislature's subsequent amendment of 15 V.S.A. § 751(b)(8) in response to the Billings decision.  Shortly thereafter, in February 2015, with the

---

[1] The family division noted that the camp property consisted of two parcels, one of which was not formally placed in the trust.  The court concluded that husband's parents inadvertently left this parcel out and therefore considered it as part of the trust.  This conclusion has not been appealed.

help of an attorney, father signed an amendment to the trust that changed the sole beneficiary of the revocable trust from husband to the parties' son.

¶ 6.     In July 2015, shortly before the first day of the contested final hearing,[2] wife filed two subpoenas: one to be served upon the rehabilitation center where father was living, requiring production of father's medical records, and the second to be served upon father, requiring him to testify in the upcoming final divorce hearing.  Husband filed motions to quash both subpoenas. The court apparently did not resolve the motions at the first day of the contested divorce hearing, and took them up on the second day of the contested final hearing, in March 2016.  By that time, a lawyer for father had entered an appearance and moved on father's behalf to quash the subpoenas. After taking some testimony, the court granted the motions to quash.

¶ 7.     The court quashed the subpoena for father's medical records on the basis of father's doctor-patient privilege.  The court rejected wife's argument that husband's procurement of a letter concerning father's health from a doctor at the rehabilitation facility amounted to a waiver of father's doctor-patient privilege because the court concluded, after taking evidence, that father himself had not actually authorized this disclosure.

¶ 8.     Regarding the subpoena wife served upon father, the court relied on 15 V.S.A. § 751(b)(8)(C)(ii), which provides that third parties to a divorce shall not be required to provide documentation or testify about their "revocable estate planning instruments," unless a party to the divorce has an interest in the trust that is vested and not capable of modification or divestment. The court rejected wife's argument that the trust was not "capable of modification or divestment" because father did not have the testamentary capacity to amend the trust—an assertion she contended father's testimony would support.  The court noted the difference between competence and testamentary capacity, as well as the ebbs and flows in cognitive capacity that often accompany

_____

[2] Neither party ordered the transcript from the first day of the contested final hearing, so we cannot tell whether the court preliminarily addressed the motions at that time, or why the second day of the hearing did not take place until eight months later.

3

dementia. Concluding that the Legislature did not intend for courts to try to sort through these issues concerning a third party's testamentary capacity in connection with a revocable trust, the court interpreted the statute to be referring to the nature of the trust, and not to the mental state of the grantor. Because the grantor was still alive, the trust in this case was still capable of modification.

¶ 9. The court closed the evidence at the conclusion of the March 2016 hearing. Father died in April 2016 and wife moved to re-open the evidence in the divorce proceeding, arguing that his death meant that husband had acquired a significant amount of assets from the trust. The court granted wife's motion and held a hearing in June 2016.[3] At the hearing, the parties primarily focused on the trust's CD and the student loan that was taken out in wife's name for the parties' son. In documents wife submitted to the court after the hearing she argued that the court should include the trust assets as part of the marital estate because the son was a nominee beneficiary of the trust assets, meaning that father named him as the sole beneficiary only to shield the assets from wife, and in the alternative that husband had equitable ownership over the trust assets.

¶ 10. The family court issued a final order in November 2016. The court considered the § 751(b) factors relevant to marital property division and concluded that the parties were roughly on equal footing: the parties' incomes were comparable, neither contributed to the vocational skills of the other, neither had significant health issues, marital fault was not an issue, and the marriage was long-term. The court did note, however, that husband is ten years older than wife and therefore has fewer income-earning years left.

¶ 11. Regarding the trust, the court declined wife's request that it treat the trust assets as part of the marital estate. It determined that the parties' son was not a nominee. The court distinguished this case from our prior cases concerning nominees by noting that, because the assets

---

[3] After granting wife's motion to reopen the evidence, the court also held a hearing in May 2016. Neither party ordered a transcript of this hearing, so we cannot discern what evidence the court took or whether the court made any relevant rulings in this hearing.

4

were in a revocable trust, husband never had title to them. Furthermore, the court determined that there was no evidence of an agreement between husband and the son, by which the son would transfer the assets back to husband and which would support the conclusion that the son was a nominee. The court did not directly address the equitable ownership argument.

¶ 12. Although the court did not treat the trust assets as part of the marital estate, it did consider evidence of husband's lifestyle as impacted by the benefits he derived from the trust. The court found it significant that husband continued to live rent-free in his parents' house, which belonged to the trust, and that he had no plans to leave in the near future. Considering this factor, and wife's extensive involvement in caring for husband's family members during their marriage, the court ordered that wife would have the exclusive right to live in the marital home for nine years, but that the house would be sold if she moved out or if husband moved out of his parents' home for a period of at least fourteen months. Both parties were ordered responsible for the loan secured by the CD; if the parties sold the home, they would pay off the loan and divide the remaining equity, and if husband paid the loan within the following year, wife's right to stay in the house would terminate and the parties would sell the home and divide the equity. The court did not order any spousal maintenance. Wife appealed.

¶ 13. Wife first argues that the family court erred in granting husband's motions to quash her subpoenas because this evidence would have showed that father lacked the testamentary capacity to amend his trust. Second, she makes two arguments for why the trust assets should have been included in the marital estate. She argues that husband had full control over the trust assets before and after father's change in beneficiary and treated the property as if it were his own. Alternatively, she contends that the parties' son was a nominee, and father named him as the beneficiary only to shield the assets from wife.

## I. Motions to Quash

¶ 14. The family court did not err in granting husband's motions to quash. Wife argues that father's testimony was relevant to her argument that he did not have the testamentary capacity

to amend his trust and that husband exerted pressure on him to do so, and therefore the amendment was invalid. She argues that § 751(b)(8)(C) does not bar her subpoena to father because at the time of the subpoena, the trust in this case was not capable of modification or divestment, as father did not possess the testamentary capacity to amend it.[4] We conclude that even if the family division was a proper forum for making her claims—a proposition that we doubt—the statute bars wife's subpoena for father's testimony.

¶ 15.    As an initial matter, we question whether the family division is a proper forum in which to challenge the validity of the trust amendment on the ground that father lacked the requisite testamentary capacity. The Legislature has given the probate division exclusive jurisdiction over matters involving the administration of trusts. See Vermont Comment, 14A V.S.A. § 201; 14A V.S.A. § 203(a). The appropriate forum for challenging father's testamentary capacity to change his beneficiary is the probate division, not the family division. Allowing the family division to rule on the question in the context of husband's divorce action—in which the newly named beneficiary, the son, is not even a party—would ignore the statutory scheme for trust administration, create the possibility of inconsistent judgments on the same issue between two divisions, and potentially deprive the parties' son of his right to participate in any litigation on the subject.[5]

---

[4] Wife also asserts that father's medical records were relevant to the question of whether father was competent to amend his revocable trust to substitute the parties' son, rather than father, as the trust beneficiary. But she identifies no potentially applicable exception to the evidentiary privilege for father's medical records in this case, and no basis for compelling father—a third party—to disclose his medical records. See V.R.E. 503 (describing doctor-patient privilege and identifying exceptions to general rule of privilege); 12 V.S.A. § 1612(a) (providing that health providers may not disclose medical information "[u]nless the patient waives the privilege" or statute does so expressly). Although wife purports to appeal the trial court's ruling quashing the subpoena for father's medical records and excluding those documents from evidence, because she has not adequately briefed the salient legal issue, we decline to further address wife's arguments relating to father's medical records.

[5] We do not mean to suggest that wife would have standing to bring this claim in the probate court; we decline to address that question in this case.

¶ 16.   Even if the family division did have jurisdiction to determine father's testamentary capacity, the superior court correctly interpreted the statute to bar wife's subpoena for father's testimony. We review questions of statutory interpretation without deference, and we enforce the language according to its plain meaning. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893.  15 V.S.A. § 751(b)(8)(C) states in relevant part that, "a person who is not a party to the divorce shall not be subject to any subpoena to provide documentation or to give testimony about: . . . (ii) his or her revocable estate planning instruments . . . unless a party's interest in an instrument is vested and not capable of modification or divestment."  The statutory exception allowing a subpoena for testimony about a party's vested interest in a trust is concerned with the terms of the trust and not with the capacity of the grantor to amend the trust.  To hold otherwise would create a circular process: father can be compelled to testify only if husband's interest in the trust has effectively vested due to father's incapacity, and wife seeks to rely on father's compelled testimony to prove his incapacity and thus her right to compel his testimony.

¶ 17.   In this case, on the face of the trust, husband's interest in the trust assets had not vested before wife's subpoena.  The trust documents allowed the grantors to amend the trust until both died, at which time the beneficiary's interest in the trust would vest and the trustee would distribute the assets.  Father was still alive when wife served the subpoena, so any beneficiary's interest in the trust assets could be modified or divested.  In fact, by the time of the subpoena, father had changed the beneficiary to the parties' son and on the face of the trust document husband had no interest in the trust assets at all.  Accordingly, the plain language of the statute applies and the family court properly determined that wife could not subpoena father to testify about the trust.

II.  Husband's Interest in the Trust Assets

¶ 18.   The family court did not err in excluding the trust assets from the marital estate. Wife makes multiple arguments to support her assertion that the family court should have treated the trust assets as if they belonged to husband.  She contends that the parties' son was a nominee because father named him as the beneficiary only to shield assets from the divorce.  She also argues

7

that for various reasons, husband's control over and use of the trust property means that the property should have been included in the marital estate. We conclude that wife's suggestion that father's change of trust beneficiary was improper or suspicious is unfounded, that wife's arguments that the trust assets should be included in the marital estate because the son was a nominee fail on the law and the facts, and that wife's other legal theories in support of her claim that the court should have included the trust in the marital estate, to the extent we understand them, are unpersuasive. The court properly considered whatever benefit husband was deriving from the trust in dividing the marital property, while declining to treat the trust itself as part of the marital estate.

¶ 19. We first emphasize that wife's general premise, that there was something fraudulent or legally improper in the change of trust beneficiary during the divorce proceedings as an attempt to keep the trust property out of the marital estate, is unfounded. By their nature, revocable trusts may be freely modified or revoked. See 14A V.S.A. § 602(c) (stating that "settlor may revoke or amend revocable trust" by complying with trust terms, executing a will or codicil explicitly doing so, or by "any other method manifesting clear and convincing evidence of the settlor's intent"). The trust in this case explicitly provided that the grantors could revoke, alter, or amend the trust at any time. During a trust grantor's lifetime, any interest of a beneficiary is subject to the grantor's control. 14A V.S.A. § 603(a). Husband does not dispute that father changed the beneficiary to the parties' son in order to bypass husband as a beneficiary, thereby keeping the trust property out of the marital estate. However, father was always entitled to name a new beneficiary, regardless of timing or purpose of the amendment. The fact that he made this change during the pending divorce in order to avoid a circumstance in which his assets would devolve to his son and become part of the marital estate is not legally improper or fraudulent. The assets were father's to transfer as he wished.

¶ 20. Wife's argument that the parties' son was a nominee is not supported by the law or the facts. On the law, she relies on cases that are inapposite. On the facts, wife relies on argument

8

rather than record evidence, and has failed to provide the necessary transcripts to facilitate our review.

¶ 21.    The cases wife relies on are distinguishable in a critical way.  Pursuant to statute and our jurisprudence, when a party to a divorce transfers property to a third person, a "nominee," with the intent of reducing the other party's share of marital property, that property will be considered part of the marital estate.  See 15 V.S.A. § 751(a) (establishing that "[a]ll property owned by either or both of the parties" is subject to equitable distribution and that "[t]itle to the property, whether in the names of either or, both parties, or a nominee, shall be immaterial"); Nevitt v. Nevitt, 155 Vt. 391, 400, 584 A.2d 1134, 1139 (1990).  Wife relies partly on Nevitt, a case in which one party to a divorce put a third person's name on the deed of the marital home in an attempt to "avoid distribution of the property."  155 Vt. at 400, 584 A.2d at 1140.  This Court affirmed the trial court's determination that the third person was a nominee and its decision to disregard the deed when distributing property, and stated that we "will not condone such actions when taken with intent to deprive one's spouse of a fair portion of the marital assets."  Id.  Wife also cites Clayton v. Clayton, 153 Vt. 138, 569 A.2d 1077 (1989), a case in which the husband transferred his stock in a family business to his sister in anticipation of a divorce proceeding.  This Court affirmed the trial court's decision to "disregard an agreement that would have conveyed marital assets in contemplation of divorce in return for little to no consideration," as this sort of agreement "has long been contrary to public policy and unenforceable as a fraudulent transfer." Id. at 142, 569 A.2d at 1079.

¶ 22.    Nevitt and Clayton are inapposite to this case.  Those cases involved the transfer of property owned by a party to the divorce.  Here, husband did not own the trust assets when his father changed the trust beneficiary; he had only a future interest in the assets, contingent on remaining the beneficiary of the trust.  See 14A V.S.A. § 603(a) ("While a trust is revocable, rights of the beneficiaries are subject to the control of . . . the settlor).  And, as explained above, father had the authority to change the trust beneficiary, even if done purposefully to keep the trust assets

9

out of the marital estate. The trust assets never belonged to husband; his interest was always subject to the whims of the settlors. The property was never part of the marital estate, and father's decision to bypass husband and identify the parties' son as the trust beneficiary did not improperly deprive wife of marital property in the way that the transfers at issue in Nevitt and Clayton did.

¶ 23. More importantly, wife's arguments are not supported by the record. In arguing that the son in this case was a nominee and husband was the true effective beneficiary of the trust estate wife offers no citations to the record, and points to no evidence, other than the "suspiciousness" of the timing of the change of beneficiary, to support the contention that the son has merely accepted the trust estate in a nominal capacity, holding it for father's benefit upon request. Wife has not identified any testimony showing that the son is merely a nominal holder of the trust assets, or collusion between the son and father. Although she identifies factors from which the court may infer such collusion, including husband's apparent continued access to trust assets for his own use, she has not shown based on the record in this case that the family division abused its discretion in deciding that the son was not a nominee. See Nevitt, 155 Vt. at 400-01, 584 A.2d at 1139-40 (reviewing trial court's decision regarding nominee for abuse of discretion).

¶ 24. Not only are wife's arguments unsupported by citations to the record, but the record itself is not sufficiently complete to enable us to thoroughly evaluate them. Wife ordered transcripts of only the second day of the final divorce hearing—the day when she testified—and ordered transcripts of only one of the two hearings the court held after reopening the evidence upon father's death. We have no way of knowing what evidence the court heard during those two sessions. In fact, wife's brief references without citation the testimony of father's attorney relating to the change of beneficiary, but wife has not produced any transcripts containing testimony by this witness. See V.R.A.P. 10(b)(1) ("By failing to order a transcript, the appellant waives the right to raise any issue for which a transcript is necessary for informed appellate review."); Evans v. Cote, 2014 VT 104, ¶ 7, 197 Vt. 523, 107 A.3d 911 ("Without the transcript, this Court assumes that the trial court's findings are supported by the evidence.").

¶ 25.     We are also not persuaded by wife's litany of arguments that the trust assets should be treated as though they belong to husband because he had full use and control of the trust before and after father changed the beneficiary, as well as after father's death.  Wife emphasizes that while father was alive, husband co-mingled trust funds with his own, used the trust checking account as though it were his own account, and lived in his parents' house as if it were his own. She additionally stresses that after father died, the trust property should have been distributed to the beneficiary, the parties' son, but husband continued to control the property and live in his parents' house.  Wife's translation of these factual claims into a viable legal argument that the family division should have treated the trust as part of the marital estate is not entirely clear, and her arguments evolved over the course of this case.  However, none of the arguments are meritorious.

¶ 26.     We are not convinced by wife's contention that husband had "equitable ownership" over the trust assets and they should therefore be included in the marital estate.  Wife raised this argument before the family division only tangentially, and the court did not address it in on the record or in its written order.  Wife also did not brief this argument on appeal, but her counsel did raise it during oral argument.

¶ 27.     Without more support for this argument, it is unclear exactly what wife is arguing. In the context of trust law, all beneficiaries have equitable ownership in the trust assets. Restatement (Third) of Trusts Intro. Note (2003) ("Inherent in the Anglo-American trust is a separation of interests in its subject matter, the beneficiaries having equitable property interests and the trustee having a property interest that is normally a legal interest."); see also Equitable Ownership, Black's Law Dictionary (10th ed. 2014) (defining term "equitable ownership" as "[a] beneficiary's interest in trust property").  Insofar as the term "equitable ownership" is typically used in trust law, wife's argument is nothing more than a reassertion of her position, discussed above, that notwithstanding the beneficiary designation on the face of the trust, husband was the actual beneficiary.

11

¶ 28. If wife is instead requesting that the Court craft an equitable remedy on the basis that husband is unjustly enriched by his use of the trust assets, we are similarly unpersuaded. See, e.g., Weed v. Weed, 2008 VT 121, ¶ 17, 185 Vt. 83, 968 A.2d 310 (recognizing constructive trust as equitable remedy "to avoid unconscionable results and to prevent unjust enrichment"). The parties' son's interest has vested, and he therefore has a legal ownership interest in the trust property, regardless of husband's continued use of it. It would not be equitable to divest the son of his interest in the trust in order to subject the property to the distribution of marital property. If the son wants to bring a claim against husband for breaching trustee duties by using trust property for his own benefit and failing to distribute trust property as required by the trust documents, he may do so. See 14A V.S.A. § 802(a) ("A trustee shall administer the trust solely in the interests of the beneficiaries."); 14A V.S.A. § 817(b) (providing that, when trust terminates, trustee is to "proceed expeditiously to distribute the trust property to the persons entitled to it"). The probate division would be the proper forum in which to bring this claim. 14A V.S.A. § 201(c). However, the remedy for husband's alleged misconduct would not be to subject the trust property to equitable distribution in husband's and wife's divorce proceeding. See 14A V.S.A. § 1001(b) (listing remedies probate court may impose after concluding breach of duty occurred).

¶ 29. In another attempt to argue that the trust funds should be included in the marital estate, wife contends that the Court should pierce the trust "veil," similar to the way a court may pierce the corporate veil, and include the trust assets in the marital estate. Wife did not frame the argument this way before the family division, and the court therefore did not have a chance to rule on it. This Court need not address arguments not properly preserved below. See State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). Nonetheless, we note that this appears to be a novel legal theory that is not supported by our law.

¶ 30. Even if we were to import this concept into the area of trust law, it is unclear how it would apply to this context. First, there is no indication of fraud or improper behavior. We have held that a court may pierce the corporate veil "where the corporate form has been used to

perpetrate a fraud, and also where the needs of justice dictate." Agway, Inc. v. Brooks, 173 Vt. 259, 262, 790 A.2d 438, 441 (2001) (citation omitted). The record does not reflect that fraudulent or otherwise improper behavior was involved in this case. As explained above, it was father's prerogative to change the trust's beneficiary at any time and for any purpose. And, if wife is arguing that husband's actions in using the trust funds as his own were fraudulent or unjust, then that claim would again more properly be raised as a breach of fiduciary duty in the probate division because it deals with the administration of a trust. 14A V.S.A. § 201(c).[6]

¶ 31. Furthermore, it is unclear what "piercing the veil" would mean in this case. A court may pierce a corporate veil to hold a shareholder personally liable to corporate creditors when the shareholder intentionally used the corporation to shield personal assets from creditor claims. See Agway, Inc., 173 Vt. at 263, 790 A.2d at 442 (reasoning that piercing corporate veil proper when sole shareholder "purposefully undercapitalized [a corporation] with the intention of isolating his debt from business and personal assets"). Wife is analogizing the corporate form to a trust, arguing that the trust in this case was used to intentionally shield husband's property from the divorce. Her analogy, however, falls short for several reasons. For one, in contrast to the corporate scenario above, the trust assets here did not belong to husband. Secondly, we reiterate that after father died, the beneficiary's interest vested and the trustee was obligated to distribute the assets. The parties' son now has a present legal interest in the trust property; husband, as trustee, has no interest in the property so "piercing the veil" would require depriving a third party—the parties' son—of assets to which he is entitled.

¶ 32. Although the family division was correct to exclude the trust assets from the marital estate, it properly considered husband's lifestyle and the benefits husband derived from the trust when dividing marital property. For example, the court emphasized that husband is living in his parents' house rent-free and will stay there for the foreseeable future. Consequently, the court

---

[6] We again decline to consider whether wife would have standing to bring this claim in the probate division.

awarded wife exclusive rights to live in the marital home for nine years, contingent on her staying in the home and husband staying in his parents' house. Which is now owned by the trust. This was an appropriate way to consider husband's use of the trust property. See, e.g., 15 V.S.A. § 751(b)(8)(A) (providing that court "may consider the parties' lifestyle and decisions made during the marriage and any other competent evidence as related to their expectations of gifts or an inheritance"). This was the proper way to take into account the facts wife relies on in her arguments, and the family division did not err in declining to include the trust itself in the marital estate.

Affirmed.

FOR THE COURT:

_____

Associate Justice