Filed 02/24/25

**STATE OF VERMONT**

SUPERIOR COURT                     CIVIL DIVISION
Washington Unit                        Case No. 22-CV-02681

NEIL JOHNSON and JOHNSON        )
REAL ESTATE GROUP, LTD.,        )
       Plaintiffs              )
v.                              )
                                )
MRV HOLDINGS, LLC,              )
STEPHEN GAVOSTO and             )
BARBARA GAVOSTO,                )
       Defendants              )
                                )
     ****                       )
                                )
MRV HOLDINGS, LLC,              )
STEPHEN GAVOSTO and             )
BARBARA GAVOSTO,                )
    Counterclaim Plaintiffs     )
vs.                             )
                                )
NEIL JOHNSON and JOHNSON        )
REAL ESTATE GROUP, LTD.,        )
    Counterclaim Defendants,    )

## Opinion and Order Following Trial

This matter came for trial before the Court on October 22, 2024.

Plaintiffs/Counterclaim Defendants Neil Johnson and Johnson Real Estate Group

Ltd., were present and were represented by Brice Simon, Esq.

Defendants/Counterclaim Plaintiffs were present and were represented by Stephen

Cusick, Esq.[1] Both sides offered documentary and testimonial evidence. The Court

granted generous time following trial for the parties to confer regarding possible

---

[1] The Court will refer to the Plaintiffs/Counterclaim Defendants as Johnson, collectively. If describing the corporation, the Court will refer to it as JREG. It will refer to the Defendants/Counterclaim Plaintiffs as MRV, collectively. If describing the corporation, the Court will refer to it as MRV Holdings.

settlement and, failing that, to submit proposed findings of fact and conclusions of law. Additional motion practice ensued regarding a request for the Court to take judicial notice of certain facts. With the record now compete, the Court makes the following Findings of Fact and Conclusions of Law.

## The Claims

Plaintiffs filed suit in this case on August 22, 2022, alleging the following claims: violation of 9 V.S.A. § 4461 for an alleged failure to return a residential security deposit, breach of contract, breach of covenant of good faith and fair dealing, fraud in the inducement, and piercing of the corporate veil.

Defendants filed an answer and counterclaim on September 1, 2022, and moved to amend the counterclaim on February 5, 2024. The motion to amend was granted by the Court on March 9, 2024. Defendants' counterclaim brings the following causes of action: declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing.

## Findings of Fact

1. The Valley Professional Center ("VPC") was formed by a Declaration of Condominium ("the Declaration") in 1989 and was comprised of land and premises, including a four-unit condominium building, at 6971 Main Street in Waitsfield, Vermont. Exhibit 8. The Declaration established the VPC Owners' Association, Inc., to manage and operate the condominium property. The Owners' Association was comprised of the owners of the four condo units.

2. The condominium formation also included adoption of bylaws and rules. *See* Exhibit 8, By-Laws of Valley Professional Center Owners' Association ("VPC Bylaws") and Valley Professional Center Administrative Rules and Regulations ("VPC Rules"). Under VPC Bylaws, the Owners' Association members selected a Board of Directors to manage the Association.

3. Johnson bought a unit in the building in 2010. It was Unit 1, and it consisted of both residential and commercial space.

4. In July 2014, Defendant MRV Holdings, LLC purchased condo Unit 3, which was comprised of a residential suite and a commercial suite. At the time of MRV Holdings' purchase, the other unit owners were Johnson, Unit 1; Paul Sipple, Unit 2, a commercial unit; and Technical Planning and Management Company, Inc.; Unit 4, a commercial unit.

5. A number of years passed. There were ongoing disagreements among some of the owners of the property. At one point, MRV Holdings sued the Association for negligence.

6. After one difficult meeting, Mr. Gavosto approached Mr. Johnson to see if he wanted to sell his Unit. The parties began to negotiate. Johnson initially asked $180,000 for the property, but MRV Holdings countered with $178,500, which represented less than a 1% reduction in the asking price. Mr. Johnson accepted the $178,500 offer.

7. An issue of contention was that MRV Holdings wanted Johnson to vacate the Unit immediately. Johnson wanted more time. Defendant proposed a

3

lease arrangement in conjunction with the purchase and sale agreement (P&S). The P&S would have move-out dates and sums of money provided to secure that obligation. It would also have provisions governing the residential component of Unit 1, rented to Mr. Johnson, and the commercial component, rented to JREG.

8. The parties entered into the P&S for Unit 1 on November 30, 2021. Exhibits 16 and A.

9. The P&S included the following condition at § 10 Special Conditions:

> $20,000 will be held in escrow with Neal Ferenc. Upon Neil Johnson and Johnson Real Estate Group, Ltd, vacating property deposit shall be released. Should one entity leave before the other, deposit shall be released with $10,000 increments for each party, Johnson Real Estate Group, Ltd and Neil Johnson. If Johnson Real Estate Group, Ltd and/or Neil Johnson do not vacate the premises within 6 months this $20,000 shall be forfeited. Parties agree to sign paperwork to release deposit, both attesting to the property being vacated. There is a lease signed by both parties prior to closing.

Exhibit A, at 2.

10. The escrowed amounts were to be deducted from the $178,500, provided Johnson moved out on time.

11. The P&S also has a provision addressing possible attorney's fees. Section 20 states:

> If seller fails to close, or is otherwise in default, Purchaser may terminate this contract by written notice as provided in Section 29 and claim all Contract Deposit(s) as liquidated damage or subject to provisions of Section 19 relating to the thirty (30) calendar day cure period for title encumbrances or defects, elect to pursue all legal and
>
> equitable remedies provided by law. In the event legal action is instituted arising out of a breach of this Contract, for payment or return of the Contract Deposit(s) or to obtain any legal or equitable

4

remedy, the substantially prevailing party shall be entitled to reasonable attorney's fees and court costs.

Exhibit A, at 4.

12. On November 29 or 30, 2021, as a condition of entering into the P&S, the parties also executed a Lease Agreement, which contained a Lease Addendum (the "Lease" and the "Addendum," both Exhibit 1), whereby Johnson continued to lease Unit 1 from MRV Holdings. Specifically, Johnson leased Units #1 and #1A for business purposes and Unit #1D for residential purposes, comprising all of the Unit #1 Property. Exhibits 1 and B.

13. Mr. Johnson drafted both the P&S and the Lease.

14. The Tenants in the Lease are Mr. Johnson for the residential portion of the Unit and JREG for the commercial portion.

15. The Addendum provides that: "The Lease Agreement will only go into effect on the date of the successful transfer of 6971 Main St., Unit 1, Waitsfield, VT 05673 to MRV Holdings, LLC." Addendum.

16. The Addendum additionally provides as follows:

MRV Holdings LLC. members and agents shall have appointments prior to entering the usual residences occupied by Nel Johnson of Johnson Real Estate Group Ltd. Any Violation of this shall constitute a breach of lease and the monetary compensation shall be free ($0) for the entirety of this lease. and refunded any prior payments made.

Exhibit 1 (Addendum).

17. Another provision of the Lease states:

Property leased to Johnson Real Estate Group, Ltd and Neil Johnson shall be deemed satisfactory upon departure. Recourse shall only be

5

for damages that are excessive, willful and/or intentional damages to the Property. Sublettors shall be bound by their previous lease terms.

18. The Addendum contains potentially contradictory provisions regarding "deposits." In a section titled "Term, Rent, Security Deposit, Assignment and Subletting," it states:

· Rent for Johnson Real Estate Group, Ltd, shall be $600/month, with no deposit, the term not to exceed 6 months.

· Rent for Neil Johnson (residence), shall be $600/month for 3 months ending 2/28/2022, rent will then be $1200/month thereafter with a term not to exceed a total of 6 months-ending 5/31/2022; no deposit.

*Id.*

19. On the next page, however, the Addendum provides:

· Deposit for the departure of Johnson Real Estate Group, Ltd. and Neil Johnson will be split $10,000.00 each tenant.

· Deposit returned within 5 business days of vacating premises.

*Id.*

20. The Addendum expressly provides that the Addendum's terms control over those of the Lease in the event of a conflict between them.

21. Attorney Neil Ferenc was the closing agent for the transaction. He took charge of the $20,000 that had been escrowed at closing. It remains in his trust account.

22. Plaintiff credibly testified that the $20,000.00 referenced in the Paragraph 11 Special Conditions of the P&S is the same as the combined

6

$20,000.00 ($10,000.00 "each tenant") deposit referred to in the Addendum cited above.

23. Around the time of the closing, Johnson began negotiating with the owners of another condo, Mr. Sipple and his wife, to lease space in Unit 2. Mr. Sipple and his wife entered into a lease agreement with Johnson in December 2021, whereby Johnson would rent Suite 2B from the Sipple for one year, commencing on December 1, 2021, and terminating November 30, 2022. Exhibit 2 & 10.

24. The Sipple-Johnson lease included a handwritten amendment stating, "Tenant allowed to put up sign in space of office for rent." Exhibit 10, at 3. The lease included no language specifically allowing the tenant to place a sign on the signboard by the road without VPC Board approval. Johnson placed a sign for his business on the signboard without VPC Board approval.

25. Johnson began taking steps to move from the Unit 1 into Unit 2 following the closing.

26. Mr. Johnson credibly testified that the business had been moved out of Unit 1 by early 2022 and that no rent was demanded or paid regarding that space after March 2022.

27. On or about March 7, 2022, Mr. Johnson, through counsel, asked MRV to release the initial $10,000 from escrow based on the departure of JREG from the space.

28. On March 18, 2022, MRV Holdings, through counsel, objected and maintained that the commercial portion was still occupied. MRV Holdings claimed

7

that Johnson continued to maintain file cabinets and bookshelves in common areas and still had boxes in the other portions of the space. It also implied that the kitchen and coat closets were not cleaned out. Exhibit G.

29. Mr. Johnson disputed the scope of his ongoing use of common areas within Unit 1. He testified that his use was minimal and consistent with his possession of the residential portion of the Unit, that any remaining materials were in common areas, and that such use was consistent with provisions of the Addendum that permitted him to continue to occupy the unit and property as he had previously, including the use of common areas. Addendum ("Johnson Real Estate Group. Ltd. and Neil Johnson shall be able to use and occupy the unit and property as they have during the lease at no additional cost or penalty.").

30. The Court finds it slightly more credible that the commercial portions of Unit 1 were vacated as of, at least, March 7, 2022. Any remaining materials were *de minimis* and confined to common areas consistent with Mr. Johnson's prior and continued occupation of a portion of Unit 1. The Court finds persuasive Mr. Johnson's testimony that the commercial space of Unit 1 was vacant and in MRV's control at least as of March 7, 2022.

31. Mr. Johnson claimed at trial that Mr. Gavosto entered the commercial space of Unit 1 without setting up an appointment as required by the Addendum. At one point in early 2022, Mr. Gavosto did enter the commercial space of Unit 1 without an appointment. Mr. Johnson was unclear as to the exact date of the event. It was, however, "around," and likely after, the March 7, 2022 date when Mr.

8

Johnson indicated that JREG had vacated the commercial space. At that time, the Court finds that the space was within MRV Holdings' control.

32. Per the P&S, Johnson was to have vacated the entirety of Unit 1 by May 31, 2024. Otherwise, any deposit in escrow would be forfeited to MRV.

33. On May 30, 2022, Johnson informed MRV Holdings that Johnson had vacated the remaining portion of Unit 1. Exhibit 20.

34. On May 31, 2022, Mr. Johnson inquired whether Mr. Gavosto had "time to inspect the unit and grounds." He also asked for Mr. Gavosto to approve the release the $20,000 escrowed "deposit." Exhibit 19.

35. MRV Holdings responded on June 1, 2022, alleging that Johnson had not vacated the Property and that the $20,000.00 would be forfeited, pursuant to Section 10, Special Conditions of the P&S. Exhibit 17; Exhibit J.

36. MRV Holdings' correspondence identified a number of ways in which Johnson had not "vacated" the property as anticipated in the contract documents.

37. Specifically, it cited the following evidence:

A vehicle belonging to Neil Johnson has been left on the property

A sign for Johnson Real Estate Group is still on the sign post by the road

In the lobby/common area, are materials from Johnson Real Estate Group

A vacuum cleaner that was presented as a personal item during the pre-purchase walk through and then through a hand drawn document (in March) was left in the Johnson Real Estate office space in Unit 1.

A board Neil was using in his pile of goods was left behind.

9

*Id.* The listed items were documented by photographs as well.

38. Defendants proffered no other factual basis for the assertion that Johnson had not vacated Unit 1 by the May 31, 2022, deadline.

39. MRV Holdings did send Mr. Johnson notice as to its disposition of the security deposit consistent with Title 9 (assuming such notice were required).

40. Though the evidence is in dispute, the Court finds that the balance of the credible evidence at trial weighs in favor of Johnson's position that Johnson had vacated Unit 1 as required in the P&S by May 31.

41. Specifically, the Court finds credible Mr. Johnson's testimony that the vacuum and the "board" and an outdoor pile of debris were not his property. The Court also finds credible Mr. Johnson's videos, played at trial, showing a walkthrough of Unit 1 and the outdoor areas on May 31, which shows that the Unit was fully ready to be occupied by a new tenant or owner at that juncture.

42. As to the remaining evidentiary points made by MRV Holdings in that regard, they are muddied by the fact that Johnson became a subletter of Mr. Sipple in December 2021. Exhibit 2. That lease allowed him to maintain a sign,[2] to have his vehicle on the property, and to use common spaces – as others had regularly done. MRV Holdings counters that such uses were not consistent with VPC Rules. It also maintains that the Addendum did not allow Johnson to put a sign on the road.

---

[2] The evidence shows that Johnson had a prior sign on a sign post in the front of the building. It did not take it down, nor did it erect a new one.

10

43. In that regard, the parties also dispute whether Johnson's personal property was within a common area of the lobby or within Sipple's Unit 2, which Johnson rented. Exhibits 2 & 11. Though a close question, the Court finds the testimony of Messrs. Johnson and Sipple more persuasive that any personal property of Johnson's that remained after May 31, 2024 was housed within the confines of Unit 2. Mr. Sipple had "no doubt" that the materials were within his Unit. Further, Mr. Sipple was Mr. Johnson's new landlord, and Mr. Johnson was entitled to rely on his guidance as to where to place his belongings. Mr. Sipple testified as to his belief that the materials were appropriately within his Unit. Mr. Gavosto testified that he was not fully familiar with Mr. Sipple's property. To the extent Mr. Gavosto asks the Court to find the floor plan of Exhibit I to be more credible than Exhibits 5 & 11 and the above testimony, the Court is not convinced.

44. At a bare minimum, the disputed property was well beyond the confines of even the common areas of Unit 1. Indeed, both Messrs. Sipple and Johnson testified convincingly that Unit 1 was vacant as of May 31, 2022. Mr. Gavosto conceded at trial that the disputed materials in Unit 2 did not impact his ability to use Unit 1 but impacted only his general rights as to uses of common areas.

45. MRV Holdings also acknowledged at trial that potential redress for violations of VPC Rules could have been found via the Rules themselves. *See* Exhibit 8 (VPC Rules – Complaints). Indeed, the evidence shows one instance

where the Board took action concerning a vehicle that was in violation of the rules. Exhibit 12.

46. Defendant MRV Holdings' business registration lapsed and the Company's existence was terminated on April 1, 2022. Exhibit 13. The company was reinstated on August 10, 2022 (removing Barbara Gavosto as a member).

47. Mr. Johnson presented testimony alleging that Mr. Gavosto had personal animus towards him and that he had acted in bad faith in their dealings. While the Court has largely found in favor of Johnson's view as to the dates the property was vacated as provided in the P&S, and while the defense's interpretation of the relevant contract provisions was overly zealous, the Court does not find persuasive the proffered evidence of personal animus, fraud, and bad faith. It also does not find persuasive the proffered evidence that the Defendants entered into the contract under false pretenses, with no intention of returning the deposit.

48. Nor does the Court conclude that any retention of the deposits was willful as that term is used under Title 9. The Court finds that MRV Holdings' position as to the deposit was based on a good-faith difference of opinion as to the nature of the sums held in escrow.

49. Mr. Johnson further maintained at trial that, had he obtained the release of the contract deposits, he would have been able to engage in certain real estate improvements concerning a plot of land that he had purchased. He also suggested that the removal of a sign relating to his business by MRV Holdings resulted in unspecified loss of income. He provided no hard numbers regarding

12

such alleged damages, although he agreed that he "should have." Mr. Johnson has not sought compensation for such alleged damages in his post-trial submission. In any event, the Court finds that such alleged injuries were not persuasively supported by trial testimony or reliable exhibits.

## Conclusions of Law

The Court makes the following determinations as to the legal claims brought by the parties. The Court will address Plaintiffs' claims, followed by those of the Defendants.

### I. Breach of Contract

The factual findings support the conclusion that Johnson complied with the terms of the P&S and Addendum; that the commercial portion of Unit 1 was vacated as of March 7, 2022; that any remaining materials were consistent with Mr. Johnson's ongoing residential use; and that Johnson made a request for the release of the $10,000 at that time, which should have been honored. The failure to do so was a breach of contract by MRV Holdings.

Similarly, the factual findings support the conclusion that Johnson complied with the terms of the P&S and Addendum; that all remaining portions of Unit 1 were vacated as of May 31, 2022; that Johnson made a request for the release of the $10,000 at that time, which should have been honored. The failure to do so was a breach of contract by MRV Holdings.

The Court rejects MRV Holdings' position that Johnson could not have been deemed to have vacated if "even a gum wrapper" were left in Unit 1. Although it is

13

worth noting that nothing approaching even a gum wrapper was evident on the video, the Court does not believe that to be a reasonable interpretation of the contract terms.

The Court is also not persuaded by MRV's main legal point that any materials remaining on the property that were potentially in violation of the VPC Rules somehow violated the terms of the P&S. Even if some of Johnson's property were in a common area, and his car and trailer and sign needed some form of Board approval, those concerns are matters for the Board. The Board has a process to address such matters and assess whether a violation occurred, whether to enforce the rules, and what type of penalty would be warranted. *See* Exhibit 8 (VPC Rules – Complaints) & Exhibit 12. Such alleged misconduct, to the extent it could be established as a violation of the VPC Rules, would be the responsibility of Mr. Sipple as landlord of Mr. Johnson or of Johnson "as tenant" of Mr. Sipple. Ultimately, as between Johnson and MRV Holdings, the Court sees those points as having no bearing on whether JREG and Mr. Johnson had vacated the relevant portions of Unit 1 as provided by the P&S as of March 7 and May 31, which they had.

The P&S provides that the party substantially prevailing in a dispute over the payment of the funds held in escrow is entitled to attorney's fees. Johnson is entitled to such fees, which shall be sought by a separate request within 28 days of this Order.

14

Johnson also asserts breach of contract in connection with Mr. Gavosto's entry into Unit 1 without an appointment sometime after March 7, 2022. It takes nothing from that claim. Per Mr. Johnson's testimony, which the Court has found credible, MRV Holdings had control over the space at that point. The Court sees no legal basis to have required Mr. Gavosto to make an appointment to enter his own property. While no appointment was made, none was needed under the Court's view of the facts.[3]

II.     Breach of the Covenant of Good Faith and Fair Dealing

The Court has found breach of the express terms of the P&S by MRV. The Court sees no other conduct established by the Plaintiffs that may violate the terms of the covenant. As the Supreme Court has advised:

> To the extent that [the] claim for breach of the implied covenant is duplicative of his breach-of-contract claim, it cannot be sustained as a matter of law. Where a party alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct ....

*Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 53, 218 Vt. 144, 169.

Just so here. The Court finds no breach of the implied covenant.

III.     Failure to Return the Residential Deposit

---

[3] MRV Holdings argues that no appointment was needed because Johnson was no longer "occupying" Unit 1 for purposes of the Addendum condition but that it also had not "vacated" the space for purposes of the escrow provision of the P&S. While the Court sees no basis for affording different definitions to those terms under the contract documents, it need not reach that issue in light of its determination as to JREG's date of departure from the Unit.

15

The parties have wrangled at length at trial and after over whether or not the $10,000 placed into escrow for the residential portion of the lease should be considered a security deposit under Title 9. There are strong points in both directions. First, the Addendum provides under the header: "Term, Rent, Security Deposit, Assignment and Subletting" that:

· Rent for Neil Johnson (residence), shall be $600/month for 3 months ending 2/28/2022, rent will then be $1200 a month thereafter, with a term not to excel a total of 6 months-ending 5/31/2022; *no deposit*. (Emphasis added).

The Addendum later states, however: "Deposit for departure of the Johnson Real Estate Group, Ltd. and Neil Johnson will be split $10,000 each tenant. Deposit to be returned within 5 days of vacating the premises."

Second, Title 9 has an expansive definition of "security deposit," which includes "any advance, deposit, or prepaid rent, however named, which is refundable to the tenant at the termination of or expiration of the tenancy." 9 V.S.A. § 4461.

Third, Title 9 does not allow residential landlords and tenants to negotiate around or contract away its provisions that govern the proper handling of security deposits. 9 V.S.A. 4454 states:

No rental agreement shall contain any provision that attempts to circumvent or circumvents obligations and remedies established by this chapter and any such provision shall be unenforceable and void.

Fourth, Mr. Johnson drafted the provisions relating to the deposit.

The Court concludes that it need not resolve that thorny legal issue. It has determined that MRV Holdings breached its obligations under the P&S to release

16

the escrowed funds.  It has also found that any actions taken by MRV regarding the alleged security deposit were not done in willful derogation of its duties under Title 9.  Accordingly, there is no basis to double the sum of the alleged security deposit under 9 V.S.A. § 4461(e).  In other words, by prevailing on its breach of contract claim Mr. Johnson has recovered all he would have been entitled to under Title 9.

## IV.    Fraud in the Inducement

"Fraud in the inducement entails the intentional misrepresentation of existing fact, affecting the essence of the transaction when the misrepresentation was false when made and known to be false to the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to [their] damage." *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶ 141, 208 Vt. 578 (citing *Union Bank v. Jones*, 138 Vt. 115, 121 (1980)).  "[I]n all cases where fraud is alleged, it must be proved by clear and convincing evidence." *Gavala v. Claassen*, 2003 VT 16, ¶ 8, 175 Vt. 487 (mem.).

Here, the Court has rejected Johnson's proffered evidence in support of this claim.  As a result, it has not been established.

## V.    Piercing the Corporate Veil

Johnson contends that the individually named Defendants should be liable personally for the breaches of MRV.  He asks the Court to "pierce the veil" of that corporate form and conclude that the individual Defendants are not entitled to rely on the protections of the corporate form.  The Court disagrees.

Our Supreme Court has advised:

17

Although shareholders are not generally liable for the debts of the corporation, shareholders can be held liable where the corporate form has been used to perpetrate a fraud or to shield the shareholders' assets against legitimate claims of a creditor. *See Winey v. Cutler*, 165 Vt. 566, 567, 678 A.2d 1261, 1262 (1996) (mem.); *Roberts*, 86 Vt. at 88, 83 A. at 812; *see also* 11A V.S.A. § 6.22.

The court will look beyond the corporation to its shareholders for liability, that is, pierce the corporate veil, where the corporate form has been used to perpetrate a fraud, id., and also where the needs of justice dictate.

*Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001).

In *Agway*, the Court permitted piercing of the corporate form because:

In this case there was substantial evidence of not only a lack of corporate formality, but more significantly, of the fact that Brooks Farm, Inc. was a mere corporate strawman for the Brooks Brothers Farm partnership and John and Mark Brooks's personal businesses—without assets, capital, or purpose beyond evading contract liability. We will uphold a trial court decision to pierce the corporate veil where it has done so, as in this case, to correct the use of the corporate form to evade legitimate claims of judgment creditors

*Id*. at 264.

Here, Johnson has come forward with no affirmative evidence indicating that MRV Holdings has committed intentional fraud or disregarded the corporate form with an eye towards avoiding creditors. There is no evidence in the record that it is undercapitalized or that its financial accounts were mixed with those of the individual Defendants.

The only evidence Johnson relies upon is that MRV Holdings' registration had lapsed at the time when the second portion of the escrow was to have been released. It was reinstated four months later. That four-month lapse in registration is not enough to disregard MRV Holdings' corporate identity, however.

18

First, as MRV points out, the four-month lapse in registration is insufficient alone to demonstrate fraudulent use of the corporate form from an equitable perspective. *See Agway*, 173 Vt. at 263, ("[I]t is doubtful that the court would have equitable cause to pierce the corporate veil merely because a closely held corporation did not follow corporate formalities, [e]quity . . . .").

Second, Johnson's contention that the individual Defendants were acting as a "doing-business-as" entity during that four-month period is not supported by the laws governing limited-liability corporations. Title 11 provides the following guidance regarding the lapse of a corporate registration and a later reinstatement:

> When the reinstatement becomes effective, it relates back to and takes effect as of the effective date of termination of the company's articles of organization or the date the company's certificate of authority was terminated under subsection (a) of this section as if the termination never occurred.

11 V.S.A. § 4034(b). Section 4034(d) further provides:

> (d) Involuntary termination under this section does not:
>
> $*$ $*$ $*$
>
> (4) alter the limited liability status of members or managers of the limited liability company or foreign limited liability company; or
>
> (5) impair the validity of acts of the limited liability company during the period between involuntary termination and reinstatement.

Given those precepts, there is no basis to hold the individual Defendants liable on this record.

19

## VI. The Counterclaims

MRV Holdings has raised counterclaims for declaratory judgment, breach of contract, and breach of implied covenant of good faith and fair dealing. The Court has determined that MRV Holdings breached its contractual obligations and that Johnson acted in accord with Johnson's obligations under the contract documents. Accordingly, it also rejects MRV Holdings' contrary allegations as a factual matter and the legal claims that flow from them.

## VII. Damages

Johnson is entitled to the release of the security deposit for the commercial portion of the lease retroactive to March 12, 2022, and for the residential portion retroactive to June 5, 2022. Per the P&S, he is the substantially prevailing party as to that issue. He is entitled to his reasonable attorney's fees as a result.

As to Johnson's additional alleged contract damages, they fail because they are highly speculative. "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Restatement (Second) of Contracts* § 352; *see also id*. § 352 cmt. a ("Courts have traditionally required greater certainty in the proof of damages for breach of a contract than in the proof of damages for a tort.").

Mr. Johnson's testimony as to lost income related to his sign and lost opportunities relating to improving his real property were not proven with sufficient evidence to support a damage award in those regards.

Likewise, there is insufficient evidence to support an award of punitive damages in this case.

Conclusion

In light of the foregoing, Plaintiffs are entitled to judgment as to their claims regarding breach of the P&S and their accompanying claim for resulting attorney's fees. They are also entitled to judgment in their favor as to the Counterclaims.

Defendants are entitled to judgment as to the remaining claims brought by Plaintiffs.

Plaintiffs are entitled to their costs of suit.

Plaintiffs shall submit a proposed judgment order within 14 days.

Within 28 days, Plaintiffs shall file their claim for attorney's fees and costs. The corporate Defendant may submit a response within 14 days, and any reply will be due 14 days after that filing. The Court encourages counsel to confer in an attempt to avoid ongoing and costly litigation concerning resolution of those remaining issues.

Judgment is entered in favor of the individual Defendants as to Plaintiffs' claims against them. It is unclear whether the individual Defendants have incurred costs separate from those of MRV Holdings. If so, they are entitled to such costs of suit and may submit such a claim within 28 days.

Electronically signed on Monday, February 24, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge

21