NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 26

No. 24-AP-066

| | |
|---|---|
| Berol Dewdney and Cordelia Dewdney | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| Ralph E. Duncan, IV | October Term, 2024 |

David A. Barra, J.

Justin B. Barnard and Anne B. Rosenblum of Dinse P.C., Burlington, for Plaintiffs-Appellants.

Sharon L. Annis of Annis & Goddard, PLC, Brattleboro, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **COHEN, J.**   Plaintiffs Berol and Cordelia Dewdney appeal the civil division's decision granting summary judgment to defendant Ralph Duncan, IV on plaintiffs' claims for intentional interference with expectation of inheritance, breach of contract, promissory estoppel, unjust enrichment, and constructive fraud. We affirm.

I. Factual and Procedural Background

¶ 2.     The following facts were undisputed for purposes of summary judgment, unless otherwise noted. Anna Dewdney was an author and illustrator of a popular series of children's books. Plaintiffs are Anna's adult daughters from her first and only marriage, which ended when they were children. Defendant was Anna's romantic partner, with whom she began a relationship in the late 1990s. Anna, defendant, and plaintiffs lived together for several years. From 2012 until

Anna's death in 2016, Anna and defendant lived together in a house purchased by Anna. Defendant worked as Anna's employee between 2012 and 2016, helping to develop and run her book business.

¶ 3.   In October 2011, Anna created a revocable inter vivos trust to receive the royalty income from her books. Anna designated plaintiffs and defendant as beneficiaries of the trust with 40% of the income assigned to each plaintiff and 20% assigned to defendant. At the same time, defendant executed his last will and testament in which he designated plaintiffs as his sole heirs if Anna predeceased defendant. In 2015, Anna was diagnosed with terminal glioblastoma. Defendant was her primary caregiver during the course of her illness.

¶ 4.   Anna amended her trust four times between 2015 and 2016. In May 2015, Anna amended the trust to appoint defendant as a co-trustee. In August 2015, Anna amended the trust a second time to make the trust compatible with a new stand-alone literary trust not relevant to this appeal. During this time in 2015, Anna considered amending her trust again to avoid a large tax burden on the trust's beneficiaries, but she communicated to her attorney via email her doubts about changing the trust in defendant's favor. However, in March 2016, Anna stated that the previous year had made her feel differently about her estate planning and that she wished to increase defendant's percentage of the trust distribution. Thereafter, Anna made her third amendment to the trust and changed the distribution of the trust income to 25% for each plaintiff and 50% to defendant. The trust provided that if defendant predeceased plaintiffs, they would each receive 50% of the trust distributions. Anna alerted plaintiffs of the third amendment to her trust in June 2016 via email. In August 2016, Anna amended her trust for a fourth time in a manner irrelevant to this appeal and therefore need not be described here. Anna died in September 2016. Defendant became the sole trustee of the trust upon Anna's death.

2

¶ 5.    Plaintiffs allege that Anna and defendant had a fraught and unhappy relationship and that defendant pressured her to increase his royalty income distribution.[1]  Plaintiffs assert that Anna had private conversations with plaintiffs during the summer of 2016 about changing the trust back to the original version and that Anna did not want defendant to know because he would be angry.  Finally, plaintiffs allege that defendant entered into an oral agreement with Anna to make plaintiffs his sole heirs under his will in exchange for increasing his distributions from the trust.  They claim that defendant affirmed this agreement to plaintiffs in person.  Defendant denies that such an agreement was ever made.  It is undisputed that in November 2021, when plaintiffs attempted to confirm the agreement with defendant, defendant's attorney told them that "[n]o such agreement exists" and that defendant was "under no legal obligation to bequeath [plaintiffs] any portion of his estate."

¶ 6.    In February 2022, plaintiffs filed a complaint in the civil division alleging intentional interference with expectation of inheritance (IIEI), breach of contract, promissory estoppel, unjust enrichment, constructive fraud, and breach of fiduciary duty.  Plaintiffs sought the creation of a constructive trust entitling them to all distributions exceeding defendant's original 20% share and restitution of any amounts previously distributed to defendant that exceeded 20%.  In December 2023, defendant filed a motion for summary judgment on all counts.

¶ 7.    In February 2024, the court granted summary judgment to defendant.  The court ruled that IIEI was a cognizable cause of action in Vermont but that plaintiffs were required to first seek a remedy in the probate division.  The court determined that plaintiffs failed to establish breach of contract based on anticipatory repudiation, concluding that the doctrine of anticipatory breach did not apply where Anna had fully performed because there was no longer an "interdependency of obligations."  It rejected plaintiffs' promissory estoppel claim, concluding

---

[1]  Defendant testified that he did not push for the amendment to the trust.

that plaintiffs could not show detrimental reliance because defendant had not acted inconsistently with his alleged promise. The court likewise granted summary judgment on the unjust enrichment claim because plaintiffs were receiving the benefit of the trust and were named as defendant's heirs in defendant's will. The court ruled that plaintiffs' constructive fraud claim failed as a matter of law because plaintiffs asserted that defendant acted with bad faith and evil intent, which are elements that must be absent for a constructive fraud claim. Finally, the court concluded that it lacked jurisdiction over plaintiff's breach of fiduciary duty claim because probate courts have exclusive jurisdiction over the administration of trusts. On appeal, plaintiffs challenge the court's grant of summary judgment for all claims except breach of fiduciary duty.

## II.  Analysis

¶ 8.  We review a decision granting summary judgment de novo, using the same standard as the trial court. Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 7, 204 Vt. 215, 165 A.3d 1065. "Summary judgment is appropriate when, construing the facts as alleged by the nonmoving party and resolving reasonable doubts and inferences in favor of the nonmoving party, there are no genuine issues of material fact and judgment is appropriate as a matter of law." Sheldon v. Ruggiero, 2018 VT 125, ¶ 14, 209 Vt. 33, 202 A.3d 241 (citing V.R.C.P. 56). When reviewing such a motion, we "regard as true all allegations of the nonmoving party supported by admissible evidence and give the nonmoving party the benefit of all reasonable doubts and inferences." Wood v. Wallin, 2024 VT 21, ¶ 8, __ Vt. __, 316 A.3d 266 (quotation omitted). We review questions of law de novo. J & K Tile Co. v. Wright & Morrissey, Inc., 2019 VT 78, ¶ 11, 211 Vt. 179, 222 A.3d 936.

### A.  Intentional Interference with Expectation of Inheritance

¶ 9.  Plaintiffs first argue the court erred in holding that they were required to pursue their IIEI claim in the probate division before bringing it to the civil division. Plaintiffs assert that no remedy in probate court need be sought because the claim concerns an inter vivos trust rather

4

than a will, and therefore does not interfere with the operation of probate law. They argue that there is no policy justification for the probate-exhaustion requirement in this context. Plaintiffs argue that no other recognized interference tort requires a comparable limitation. Finally, plaintiffs argue that the court erroneously drew inferences in favor of defendant by finding that plaintiffs knew they had a remedy in 2016 before filing this action. We agree with the trial court that plaintiffs were required to pursue a remedy in the probate division before pursuing their tort claim in the civil division, and that their failure to do so means that their claim for IIEI was barred.

¶ 10.    We have not previously recognized the tort of IIEI, nor is it codified in Vermont statutes. Plaintiffs request that we adopt the definition of IIEI contained in the Restatement (Second) of Torts. We generally will follow the Restatements unless there is a "strong rationale to the contrary." Langlois v. Town of Proctor, 2014 VT 130, ¶ 34, 198 Vt. 137, 113 A.3d 44. The Second Restatement defines IIEI as follows: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B (1979). This definition was significantly revised in the Third Restatement, which states that a defendant is liable for IIEI when:

> (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>
> (b) the defendant committed an intentional and independent legal wrong;
>
> (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
>
> (d) the defendant's conduct caused the expectancy to fail; and
>
> (e) the plaintiff suffered economic loss as a result.

Restatement (Third) of Torts: Liab. for Econ. Harm § 19(1) (2020). The Third Restatement, unlike the Second Restatement, also provides that an IIEI claim "is not available to a plaintiff who had

the right to seek a remedy for the same claim in a probate court," also known as the probate-exhaustion rule. Id. § 19(2).

¶ 11.    While we have not previously recognized the tort of IIEI, Vermont courts already recognize claims for similar torts such as tortious interference with a contractual relationship.  See, e.g., Kneebinding, Inc. v. Howell, 2018 VT 101, ¶¶ 92-94, 208 Vt. 578, 201 A.3d 326 (upholding well-established tort of intentional interference with contractual relationship in Vermont); Kollar v. Martin, 167 Vt. 592, 593, 706 A.2d 945, 946 (1997) (mem.) (detailing standards for claim of tortious interference with contractual relationships); Howard Opera House Assocs. v. Urban Outfitters, Inc., 166 F. Supp. 2d 917, 930 (D. Vt. 2001) (finding that defendant needed to establish improper inducement for tortious interference with contract claim under Vermont law).  We have also recognized, from the Restatements, other new torts related to traditional tortious interference claims, such as tortious interference with performance of office.  See Stone v. Town of Irasburg, 2014 VT 43, ¶¶ 64-67, 196 Vt. 356, 98 A.3d 769 (recognizing tortious interference with performance of office as extension of general tortious interference claims and tortious interference with employment relationship).

¶ 12.    Tortious interference with contract contains similar elements to IIEI.  Both involve an improper interference in which a defendant obstructs a benefit to a plaintiff and causes an economic loss as a result.  See Kneebinding, 2018 VT 101, ¶ 93 (describing tortious interference with contract); Restatement (Third) of Torts: Liab. for Econ. Harm § 19(1).  We therefore hold that IIEI is analogous to pre-established torts of interference and is a natural extension of our tortious interference case law.

¶ 13.    We further conclude that the Third Restatement definition of IIEI, with its probate-exhaustion requirement, is the appropriate definition to adopt for the following reasons.  Adopting the probate-exhaustion rule will aid the efficiency of probate courts in deciding matters within their specialized knowledge in a timely manner.  See In re Estate of Piche, 166 Vt. 479, 484, 697

6

A.2d 674, 677 (1997) (noting need for probate courts to function efficiently and effectively, particularly when settling estates in probate). Similarly, the probate-exhaustion rule serves to limit tort claims to avoid interference with ongoing probate proceedings while also preventing parties from circumventing the probate courts and litigating what are clearly probate issues before the general trial courts. See Restatement (Third) of Torts: Liab. for Econ. Harm § 19 Reporter's Note (a). Preventing interference and limiting the scope of claims will reduce the possibility of inconsistent judgments between the civil division and probate division by limiting suit in civil court to instances where there is no remedy in probate. See Collins v. Collins, 2017 VT 70, ¶ 15, 205 Vt. 251, 173 A.3d 345 (holding probate division is proper forum for claim involving administration of trust to avoid inconsistent judgments); Garruto v. Cannici, 936 A.2d 1015, 1022 (N.J. Super. Ct. App. Div. 2007) (holding IIEI claim barred when plaintiffs failed to pursue adequate remedy in probate). Finally, adopting the rule also respects the legislative decision to carve out probate-specific remedies and jurisdiction. See 4 V.S.A. § 35; 14A V.S.A. §§ 201-203; Wilson v. Fritschy, 2002-NMCA-105, ¶ 19, 55 P.3d 997 (holding legislative intent for probate code indicates IIEI claim is barred when probate proceedings are available).

¶ 14. Plaintiffs argue that the Third Restatement makes a distinction between probate jurisdiction over a tort claim relating to a will versus an inter vivos trust. See Restatement (Third) of Torts: Liab. for Econ. Harm § 19 cmt. c. The Third Restatement states that "[a] probate court likewise is unable to provide a remedy for wrongful conduct in relation to a nonprobate transfer, such as a transfer by inter vivos trust," which on its face would appear to mean that any IIEI claims involving inter vivos trusts are exempt from probate. Id. § 19 cmt. c. However, as the Third Restatement explains, "[t]he law of tort defers to the law of probate because probate is the creation of the legislature." Id. § 19 cmt. f. Under Vermont law, the probate division is vested with exclusive jurisdiction over claims brought by a trustee or beneficiary concerning trust

7

administration. 14A V.S.A. § 203(a); 4 V.S.A. § 35. The law of tort defers to this legislative grant of exclusive probate jurisdiction.

¶ 15. Plaintiffs cite to cases from other jurisdictions to support their claim that we should distinguish between wills and inter vivos trusts for the probate-exhaustion rule. We find these cases unpersuasive because these other jurisdictions do not have statutory mandates vesting the probate division with exclusive jurisdiction over the administration of trusts as we do in Vermont, and many of the cited cases do not contemplate trust administration.[2] See, e.g., Sacks v. Dissinger, 178 N.E.3d 388, 396 (Mass. 2021) (holding "it may be permissible for plaintiffs to bring suit" in tort when claim involves transfer not requiring a decree in probate); M.G.L.A. 215, § 6 (outlining concurrent jurisdiction of probate and supreme judicial court over matters of trusts); Griffin v. Baucom, 328 S.E.2d 38, 42 (N.C. Ct. App. 1985) (holding plaintiff may pursue tort remedy for estate cases in which no will was submitted to probate); N.C.G.S.A. § 36C-2-203 (granting "the clerks of superior court" exclusive jurisdiction over trusts); N.C.G.S.A. § 28A-2-4 (granting clerks exclusive probate jurisdiction over wills and testamentary estates). Accordingly, we adopt the approach taken by the Third Restatement and hold that an IIEI claim is not available to a plaintiff who had the right to seek a remedy for the same claim in probate court.

¶ 16. Plaintiffs argue that they did not have the right to make their claim in the probate division because their claim does not concern the administration of the trust, and that they are instead seeking a remedy for defendant's undue influence, duress, and fraud in inducing Anna to amend the trust. Despite plaintiffs' attempt to reframe their claim on appeal, their challenge to the

---

[2] We agree with plaintiffs that the probate of wills is always subject to the probate-exhaustion rule and that trusts are intended to avoid probate and will not typically be subject to exhaustion in the probate division. See 4 V.S.A. § 35. However, trusts may be subject to probate as directed by the Legislature, as is the case with the administration of trusts under 14A V.S.A. § 201(a) and § 203(a). See In re Peter Val Preda Trusts, 2019 VT 61, ¶ 10, 210 Vt. 607, 218 A.3d 27 ("[T]he probate division does not have automatic ongoing supervision over the administration of trusts, but may intervene in matters within its jurisdiction."). In these special circumstances, the probate-exhaustion rule under IIEI applies to trusts.

trust amendment implicates the administration of the trust. We reached a similar conclusion in Collins v. Collins. 2017 VT 70, ¶ 15, 205 Vt. 251, 173 A.3d 345. In Collins, a plaintiff challenged the validity of a trust amendment in the family division on the ground that the settlor lacked the requisite testamentary capacity to amend his inter vivos trust. We held that the proper forum for challenging the settlor's capacity to make an amendment was the probate division because the Legislature gave the probate division exclusive jurisdiction over the administration of trusts. Id.; 14A V.S.A. § 201 (noting trust is not subject to ongoing supervision by probate division, but probate jurisdiction may be invoked by interested persons); 14A V.S.A. § 203(a). Challenging the settlor's ability to change the beneficiary necessarily implicates the administration of the trust because the trustee must know to whom to administer the trust property. See Collins, 2017 VT 70, ¶ 15. Here, plaintiffs challenge whether Anna was unduly or fraudulently influenced to change the trust distributions between beneficiaries, a question that similarly involves the administration of the trust and therefore falls within the exclusive jurisdiction of the probate division.

¶ 17. Finally, plaintiffs argue that the trial court improperly drew inferences in favor of defendant. Specifically, plaintiffs assert that the court incorrectly found that plaintiffs had an opportunity to pursue their claims in probate court as of 2016 but chose not to do so. We need not determine whether the court drew impermissible inferences because it would not change the outcome of the present matter. See Hous. Our Seniors in Vt. Inc. v. Agency of Com. & Cmty. Dev., 2024 VT 12, ¶ 10, __ Vt. __, 315 A.3d 1000 (holding we can affirm lower court decision on different grounds if "the record before us discloses any legal ground which would justify the result" (quotation omitted)). Assuming that plaintiffs were unaware of defendant's alleged actions until December 2021, as they claim, the court was still correct in holding plaintiffs were barred from bringing their IIEI claim in the civil division because they had not first pursued it in the probate division. Supra, ¶ 15. We therefore affirm the court's decision to grant summary judgment for defendant on this claim.

9

## B. Breach of Contract

¶ 18.    Plaintiffs next challenge the court's decision to grant summary judgment to defendant on their breach-of-contract claim.  Plaintiffs argue that defendant repudiated the oral contract with Anna when defendant's counsel stated that defendant was "under no legal obligation" and that this repudiation gives rise to liability for anticipatory breach of contract.  Plaintiffs assert that the court erred in holding that there is no breach of contract from anticipatory repudiation when the non-breaching party—here, Anna—has fully performed, arguing that such a limitation has been criticized and that there is no compelling justification to unfairly bar them from recovery. In the alternative, plaintiffs argue that should we adopt this limitation, it should not apply where plaintiffs seek restitution.

¶ 19.    The issue of whether the doctrine of anticipatory repudiation applies when one party has already fully performed its end of the contract and is merely awaiting payment is one of first impression in Vermont.  See generally Smyth v. United States, 302 U.S. 329, 356 (1937) (holding anticipatory breach generally has no application to unilateral contracts); Long Island R.R. v. Northville Indus. Corp., 362 N.E.2d 558, 563-64 (N.Y. 1977) (explaining rationales and jurisdictional preference of whether anticipatory breach applies to unilateral contracts).  However, we need not reach this novel issue because, assuming that plaintiffs can proceed under a breach-of-contract theory in these circumstances, the undisputed evidence shows that defendant did not repudiate the alleged contract.

¶ 20.    When a defendant repudiates an agreement before the time for performance, the defendant has committed an anticipatory breach of the agreement.  Lowe v. Beaty, 145 Vt. 215, 218, 485 A.2d 1255, 1257 (1984).  A repudiation must be a "[p]ositive and unequivocal refusal to perform."  Margolis v. Daily Direct LLC, 2023 VT 20, ¶ 8, 218 Vt. 31, 297 A.3d 144 (quotation omitted).  The repudiation can be an explicit or implicit representation that the defendant cannot or will not perform and can be conveyed by either:

> (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . . [or] (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

Record v. Kempe, 2007 VT 39, ¶ 15, 182 Vt. 17, 928 A.2d 1199 (alterations in original) (quotation omitted).

¶ 21. In Lowe v. Beaty, we held that the plaintiff proved the existence of unequivocal statements sufficient to constitute an anticipatory breach of an employment contract, namely, multiple conversations and a letter in which defendant repeatedly urged plaintiff to relocate and made comments about the uncertainty of a future position for plaintiff, as well as two requests for plaintiff's resignation. 145 Vt. at 218, 485 A.2d at 1257-58. These direct statements had a compounding effect that established a sufficient basis for a jury to find an unequivocal repudiation. Id. Similarly, in Carvage v. Stowell, we held that the defendant repudiated a contract to sell his farm and personal property when he went to the plaintiff's house before the agreed-upon sale "and told him to do nothing more about the sale, that the deal was off and he would not go through with the contract." 115 Vt. 187, 189, 55 A.2d 188, 190 (1947). We explained that the defendant's "positive and unequivocal refusal to perform" constituted an anticipatory breach of the agreement. Id. at 192, 55 A.2d at 192.

¶ 22. Here, by contrast, plaintiffs have failed to prove statements or acts by defendant that were sufficient for a reasonable jury to conclude that he had unequivocally repudiated the alleged contract between himself and Anna. We resolve all doubts and construe the facts in favor of the nonmoving party, plaintiffs, and assume the contract between defendant and Anna existed and that defendant's statement that he is under "no legal obligation" is false. However, the falsity of the statement is no matter because the single statement through his attorney did not have the cumulative effect of the statements in Lowe, nor did defendant directly state that he would not fulfill his obligation under the contract as the defendant in Carvage did. Defendant's statement

11

that he was "under no legal obligation" to bequeath plaintiffs his estate was not equivalent to a statement that he was going to breach the alleged contract or was removing plaintiffs as his heirs. Defendant may still act in accordance with the contract, even if he disputes its existence. A statement unequivocally saying that he will breach or multiple statements about such actions would be a sufficient repudiation. At the time of the decision below, defendant's will remained unchanged. Defendant's statement through his attorney, without more, is insufficient for a reasonable jury to find that he repudiated the contract. The court accordingly did not err in granting summary judgment to defendant on plaintiffs' breach-of-contract claim.

## C. Promissory Estoppel

¶ 23. Next, plaintiffs argue that the trial court erred in awarding summary judgment to defendant on their claim for promissory estoppel because defendant's alleged repudiation gives rise to a claim of promissory estoppel even if defendant has not affirmatively disinherited plaintiffs. They assert the court erroneously conflated detrimental reliance with a breach of a promise, and the court should have instead assessed whether the promise itself induced the promisee—here, Anna—to engage in a detrimental change in position. Finally, plaintiffs argue that the court should not have given weight to the fact that defendant has not yet changed his will because they argue defendant has already disavowed the promise to Anna and defendant will likely change his will after this litigation, thereby violating his irrevocable promise to keep plaintiffs as his sole heirs. We disagree with plaintiffs' arguments because promissory estoppel will not apply when the parties are governed by a contract, as they are here. LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶ 47, 177 Vt. 316, 865 A.2d 1102. In the alternative, should no contract exist, plaintiffs have not shown breach of a promise that was detrimentally relied upon by Anna.

¶ 24. It is well established in Vermont that a party cannot claim promissory estoppel when the parties' relationship is governed by a contract. See, e.g., id.; Couture v. Trainer, 2017 VT 73, ¶ 23, 205 Vt. 319, 174 A.3d 1245 (citing Big G Corp. v. Henry, 148 Vt. 589, 594, 536 A.2d

12

559, 562 (1987)); Hous. Vt. v. Goldsmith & Morris, 165 Vt. 428, 431, 685 A.2d 1086, 1089 (1996). When a dispute arises out of a contract, promissory estoppel is inapplicable. In this case, drawing all inferences and resolving all doubts in favor of the nonmoving party, plaintiffs, we assume a valid oral contract existed between Anna and defendant. Therefore, plaintiffs' promissory estoppel claim cannot stand, and we affirm the court's decision to grant defendant summary judgment, albeit on different grounds. See Hous. Our Seniors in Vt. Inc., 2024 VT 12, ¶ 10.

¶ 25. In the alternative, even without assuming a contract existed, plaintiffs failed to show a breach of a promise that was detrimentally relied upon by Anna, the promisee. A plaintiff must show the following for a promissory estoppel claim: "(1) defendant made a promise to [the promisee] that defendant should have reasonably expected to induce action or forbearance; (2) [the promisee] relied on the promise to [the promisee's] detriment; and (3) injustice can be avoided only by enforcement of the promise." Pettersen v. Monaghan Safar Ducham PLLC, 2021 VT 16, ¶ 11, 214 Vt. 269, 256 A.3d 604.[3] The first two elements are questions of fact, and the third element is a question of law. Island Indus., LLC v. Town of Grand Isle, 2021 VT 49, ¶ 39, 215 Vt. 162, 260 A.3d 372.

¶ 26. Implicit to a promissory estoppel claim is a showing that the defendant breached a promise. See Dillon v. Champion Jogbra, Inc., 175 Vt. 1, 9, 819 A.2d 703, 709 (2002). Contrary to plaintiffs' claim, the second element may be proven through a showing that the promisee was harmed by defendant's breach of the promise. See, e.g., Tour Costa Rica v. Country Walkers, Inc., 171 Vt. 116, 122-23, 758 A.2d 795, 801 (2000) (holding defendant's breach of agreement caused plaintiff-promisee harm therefore reasonable for jury to conclude plaintiff's reliance on agreement

---

[3] Plaintiffs argued below that they are entitled to enforce the promise Anna made to defendant because they are third-party beneficiaries of that promise. The trial court did not address that argument, and plaintiffs briefly repeat the argument in a footnote in their brief. For the purposes of this appeal, we assume without deciding that a promissory estoppel claim is available to plaintiffs under these circumstances.

was detrimental). For example, we previously addressed this issue in <u>Dillon v. Champion Jogbra, Inc.</u>, in which an employee sued her employer for wrongful termination, claiming breach of contract and promissory estoppel because she claimed her employer assured her that she would be employed for at least four to six months, among other complaints. 175 Vt. at 4, 9-10, 819 A.2d at 706, 709-10. We held that a plaintiff may establish a claim for wrongful termination under a theory of promissory estoppel if the plaintiff "can demonstrate that the termination was in breach of a specific promise made by the employer that the employer should have reasonably expected to induce detrimental reliance on the part of the employee, and that the employee did in fact detrimentally rely on the promise." <u>Id</u>. at 9, 819 A.2d at 709. In that case, the employee failed to demonstrate that the employer made a promise that the employee would have job security for a few months because the alleged promise was only a "vague assurance" that it may take the employee four to six months to adjust to the job, and not a specific and definite statement. <u>Id</u>. at 10, 819 A.2d at 710.

¶ 27. Though we are not presented with an employment dispute in the present matter, the principle that promissory estoppel requires a breach of a promise that causes a detrimental reliance extends to plaintiff's claim. Here, a reasonable jury could conclude from the evidence that defendant made a promise to Anna to make plaintiffs his sole heirs in exchange for an increased distribution from the trust. However, as explained above, defendant did not break this promise. Instead, as the trial court explained, the central promise still stands because defendant has not positively and unequivocally revoked his promise, nor has he removed plaintiffs from his will. Accordingly, plaintiffs cannot show detrimental reliance, because Anna was not harmed by any breach of the promise. We therefore affirm the court's decision to grant defendant summary judgment on this claim.

14

## D. Unjust Enrichment

¶ 28.    Plaintiffs argue the court incorrectly ruled in favor of defendant on their unjust enrichment claim.   They argue that it should not matter that plaintiffs have been receiving distributions from the trust since 2016 because a claim for unjust enrichment can still be made even if the bequest is merely reduced rather than eliminated.  Plaintiffs claim that the trial court assumed plaintiffs knew about defendant's alleged deception in 2016 despite their assertion that they did not have knowledge, and thereby drew an improper inference adverse to the nonmoving party.  Finally, plaintiffs argue that the court erred in ruling that their failure to challenge the validity of the trust in probate court barred any future unjust enrichment claim and that the Court should reject a probate-exhaustion rule for unjust enrichment.  We conclude that plaintiffs were required to bring their unjust enrichment claim in the probate division and accordingly do not reach plaintiffs' other arguments.

¶ 29.    To succeed on a claim for unjust enrichment, a plaintiff must prove three things: "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value."  Beldock v. VWSD, LLC, 2023 VT 35, ¶ 68, 218 Vt. 144, 307 A.3d 209 (quotation omitted).  A recipient of a donative transfer may be liable to a claimant for unjust enrichment if the recipient diverted the donative transfer by fraud, duress, or undue influence; this includes a transfer through an inter vivos trust.  See Restatement (Third) of Restitution and Unjust Enrichment § 46 (2011).

¶ 30.    Plaintiffs asserted their claim for unjust enrichment under the theory that defendant induced Anna to amend the trust and increase his share of trust distributions through fraud and undue influence, thus reducing their expected shares and making it inequitable for defendant not to compensate them.  Like plaintiffs' IIEI claim, this claim challenges the administration of the trust because plaintiffs, the trust's beneficiaries, seek to challenge the amended distribution of the

15

trust property, and the distribution of the trust is a main function of trust administration. Therefore, plaintiffs were required to bring their claim in the probate division. 14A V.S.A. § 203(a); Collins, 2017 VT 70, ¶ 15. To hold otherwise would be to "ignore the statutory scheme for trust administration" and "create the possibility of inconsistent judgments on the same issue between two divisions." Collins, 2017 VT 70, ¶ 15. Because plaintiffs did not bring their claim in the probate division, the trial court properly granted summary judgment for defendant on this claim.[4]

### E. Constructive Fraud

¶ 31. Finally, plaintiffs argue that the trial court erred in holding that their constructive-fraud claim failed because they alleged defendant acted in bad faith in influencing Anna to amend the trust distribution, and a constructive-fraud claim is only available when there is no intent to mislead or defraud. Plaintiffs argue that they should not be barred from asserting this claim simply because the alleged facts may support a claim for actual fraud in addition to constructive fraud. Alternatively, they argue that they should have been allowed to amend their complaint pursuant to V.R.C.P. 15(b).

¶ 32. We affirm the court's decision to grant summary judgment on this claim for defendant on the same ground as the unjust enrichment claim, which is that the probate division has exclusive jurisdiction over such a claim as pled. Plaintiffs relied on a theory of undue influence as defendant's means of committing constructive or actual fraud. They alleged that defendant exerted his influence over Anna to force her to amend her trust, gaining an unfair advantage at the expense of plaintiffs who received a smaller distribution from the trust as a result. Plaintiffs' claim necessarily implicates the administration of the trust, which the Legislature has placed in the exclusive jurisdiction of the probate division. 14A V.S.A. § 203(a); Collins, 2017 VT 70, ¶ 15.

---

[4] Our holding should not be interpreted to mean that claims of unjust enrichment relating to trusts will always be under probate jurisdiction. Here, however, plaintiffs' underlying allegations of fraud and undue influence over the amendment to the trust distributions fall within the probate's exclusive jurisdiction over administration of trusts. See Collins, 2017 VT 70, ¶ 15.

16

As such, we affirm the court's award of summary judgment on plaintiffs' constructive-fraud claim. Plaintiffs' argument that they should be allowed to amend their complaint to plead actual fraud based on these same facts is moot because plaintiffs were required to seek a remedy in the probate division in the first instance for this type of challenge.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 33.   **WAPLES, J., dissenting.**  I agree with the majority that Vermont should recognize claims for intentional interference with an expectation of inheritance (IIEI) and adopt the definition of such claims from the Restatement (Third) of Torts: Liability for Economic Harm § 19 (2020). I disagree, however, that defendant was entitled to summary judgment on this claim.  The undisputed facts do not establish that plaintiffs "had the right to seek a remedy for the same claim in a probate court."  Id. § 19(2).  I would reverse the trial court's decision on the IIEI claim and remand for additional proceedings.  I therefore respectfully dissent.

¶ 34.   As set forth above, the Third Restatement recognizes tort liability for "interference with an inheritance or gift" where:

> (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>
> (b) the defendant committed an intentional and independent legal wrong;
>
> (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
>
> (d) the defendant's conduct caused the expectancy to fail; and
>
> (e) the plaintiff suffered economic loss as a result.

17

Id. § 19(1). The Restatement further provides that "[a] claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court." Id. This final requirement was added in 2020 and appears consistent with existing decisions from other courts involving wills. See, e.g., DeWitt v. Duce, 408 So.2d 216, 218 (Fla. 1981) (holding, with respect to a will, that "[t]he rule is that if adequate relief is available in a probate proceeding, then that remedy must be exhausted before a tortious interference claim may be pursued") (citing cases).

¶ 35. The Restatement differentiates IIEI liability from the more general "interference with economic expectation" rule because of complications that arise from (1) "the existence of probate, the legal process created by statute to determine the validity of a decedent's will" and (2) "the existence of another possible source of recovery: a restitution claim seeking to recover the defendant's gains, rather than a tort claim to recover the plaintiff's damages." Restatement (Third) of Torts: Liab. for Econ. Harm, § 19 cmt. a. See, e.g., Sacks v. Dissinger, 178 N.E.3d 388, 396 (Mass. 2021) (recognizing "the universal nature of the probate process to which wills are uniquely subject," and the general requirement that wills "must be declared valid before any transfers of property may occur pursuant to the will," in contrast to trusts, which "typically remain out of probate" and "the property of which is often distributed without a formal declaration of the trust's validity by a court"). The Restatement emphasizes that IIEI liability "is not meant to interfere with probate law or to provide a way for a plaintiff to avoid its limits and restrictions" but is instead intended "to provide relief when the defendant has committed an intentional legal wrong, the plaintiff has suffered injury as a result, and no remedy is available in probate." Restatement (Third) of Torts: Liab. for Econ. Harm, § 19 cmt. a. IIEI claims are further "meant to complement restitutionary remedies, not displace them." Id.; see also id., Reporter's Note (f) (recognizing that IIEI and restitution "operate as similar judge-made devices to correct unjust allocations of gains and losses" and mindful of the existing body of applicable restitution law in this area, "liability in tort and restitution" should be "harmonize[d]").

¶ 36.  The Restatement expressly recognizes that a probate court cannot redress all "forms of interference with inheritance." Id. § 19 cmt. c.  It can determine the validity of a will, for example, where a party argues that the decedent was coerced by another "into executing a will that excluded the plaintiff," but it cannot "adjudicate a claim that the decedent intended to create a different will . . . but was prevented from doing so by the defendant." Id.  "A probate court likewise is unable to provide a remedy for wrongful conduct in relation to a nonprobate transfer, such as a transfer by inter vivos trust." Id.  In these circumstances, "a restitution or tort claim may be used." Id.  The Restatement provides an example with facts similar to those at issue here.  See id. § 19 cmt. e, illus. 6 (stating that where mother created revocable trust to provide income to daughter after mother's death, and caretaker exerted undue influence to persuade mother to change trust to caretaker's benefit, "[c]aretaker may be held liable in damages" to child pursuant to an IIEI claim, or alternatively, "[d]aughter may bring a claim in restitution to collect [c]aretaker's gains").

¶ 37.  Mindful of this authority, I do not believe defendant was entitled to summary judgment on plaintiffs' IIEI claim.  Plaintiffs alleged that defendant, while in a position of confidence with respect to their mother, "applied undue influence, duress, and fraudulent promises to induce [her] to execute the Third Amendment to the Trust, thereby significantly reducing [plaintiffs'] rights to distributions from the Trust and increasing his own."  They contend that defendant emotionally manipulated their mother and falsely promised her that, in exchange for the amendment, he would maintain plaintiffs as the sole beneficiaries of his will; defendant then disavowed this promise after their mother's death.  Plaintiffs were not required to bring their IIEI claim in the probate division because the claim involves a "transfer by inter vivos trust," which is "a nonprobate transfer." Id. § 19 cmt. c.  It is not a "trust contest" under 14A V.S.A. § 604.  See 14A V.S.A. § 604, official cmt. (defining "contest" as "[a]n action to invalidate all or part of the terms of the trust or of property transfers to the trustee," and stating that "[a]n action against a beneficiary or other person for intentional interference with an inheritance or gift, not being a

19

contest, is not subject to this section"). This conclusion is consistent with the guidance provided in the Restatement and the Vermont Trust Code, which is based on the Uniform Trust Code (UTC).

¶ 38.    The Massachusetts Supreme Judicial Court reached a similar conclusion faced with similar facts and I find its analysis persuasive here. See Sacks, 178 N.E.3d 388. In Sacks, the plaintiffs were removed as beneficiaries from their grandfather's trust via a trust amendment. They sued their relatives, raising claims of intentional interference with an inheritance and unjust enrichment. The plaintiffs argued that their relatives exerted undue influence on their grandfather to increase the relatives' own shares and exclude the plaintiffs. The court considered whether the action was a "trust contest" within the meaning of the Massachusetts Uniform Trust Code (MUTC), which, like Vermont, is based on the UTC. Section 604 of the MUTC required plaintiffs to "contest the validity of a trust that was revocable at the settlor's death within . . . [one] year after the settlor's death." Id. at 393 (alterations in original) (quotation omitted). Cf. 14A V.S.A. § 604(a)(4) (employing same language but adopting UTC's optional three-year limitation period).

¶ 39.    The trial court concluded that the plaintiffs sought to "contest the validity of the trust" and that their claim was untimely. Sacks, 178 N.E.3d at 393. The Massachusetts Supreme Judicial Court reversed, rejecting the argument that the plaintiffs' claims were, "in substance, trust contests." Id. It looked to the plain language of § 604, which "suggest[ed] that the statute applie[d] to proceedings to litigate, call into question, or challenge the validity of a trust instrument (or any part thereof)." Id. (first citing Black's Law Dictionary 398 (11th ed. 2019) (defining "contest"); and then citing Uniform Trust Code § 604 cmt. (2003) ("A 'contest' is an action to invalidate all or part of the terms of the trust or of property transfers to the trustee.")). This definition appeared to "clearly capture[] claims . . . that s[ought] relief against the trust (e.g., recission or reformation)," which thereby implicitly challenged the legally enforceability or validity of a trust. Id. The court did not consider it sufficient, however, to consider only "the relief sought when determining whether a claim constitutes a trust contest" because this would "elevate the labels

20

placed on a claim or prayer for relief over the substance of a claim." Id. (observing that "a claim that does not seek rescission or reformation can still be a trust contest").

¶ 40. Looking at wills, the court "recognized the distinction between contests, which seek to determine the validity of a legal instrument, and other causes of action, which do not." Id. at 394. It considered "a will contest . . . in the nature of a property right," rather than "a vindication of personal rights." Id. (quotation omitted). "The determination of a will's validity establishes the will against all the world; it does not ultimately speak to a specific relationship among persons." Id. (quotation omitted). In a similar vein, the court considered a "trust contest" to be "an action where the underlying facts are assessed for their effect on all or part of a trust (e.g., invalidity), while a noncontest is an action where the underlying facts are assessed for their effect on a person (e.g., harm)." Id. "The ultimate object of a contest is a determination of a trust's validity, not the personal liability or even culpability of the settlors, beneficiaries, or trustees." Id.

¶ 41. The court found it significant that the UTC "explicitly carve[d] out intentional interference with an expectancy claims from the statute's purview." Id. at 394-5 (citing Uniform Trust Code § 604 cmt.); see also 14A V.S.A. § 604 official cmt. (providing same carveout). The MUTC "was modeled on the UTC" and the court "agree[d] with the UTC commentary's explicit carveout—which was not disavowed in the MUTC's own commentary—and h[eld] that the plaintiffs' intentional interference claim [was] not a trust contest." Sacks, 178 N.E.3d at 395.

¶ 42. The court also rejected the notion that "the plaintiffs' reliance on undue influence rendered [their] claim substantively indistinguishable from a contest." Id. As it explained, "a charge of undue influence may underlie a tort claim, in addition to a trust or will contest, and thus may equally be a basis for a claim of tortious interference with an expectancy." Id. The court emphasized that "[t]he difference between a trust contest and a tort claim derives not from the predicate conduct—which may be identical across the claims—but rather from where the effect of the conduct is being assessed (i.e., on the trust or on a person)." Id. In this case, "the plaintiffs'

21

claim for intentional interference [did] not challenge the nature or validity of the trust but, rather, [sought] a determination of the harm" caused by the plaintiffs' relatives. Id.

¶ 43.    The court found a significant difference between wills and trusts with respect to undue influence claims. "[I]n the wills context," existing case law established that "there could be no separate cause of action in tort based on a defendant's undue influence if there had been an adequate remedy during probate (i.e., through a contest)." Id. at 396 (citing Brignati v. Medenwald, 53 N.E.2d 673 (Mass. 1944) (holding that plaintiff who alleged undue influence in execution of will had remedy in probate court because, had "she proved the undue influence which she now allege[d], the court would have refused to probate the instrument, averting "the injury which she now allege[d]")). By "prohibiting a separate [IIEI] claim . . . where a final and conclusive probate decree necessarily addresses such a claim," a party was denied " 'a second bite at the apple' where probate proceedings invariably provide a forum." Id. It followed, however, "that where there is no such decree, it may be permissible for plaintiffs to bring suit." Id.

¶ 44.    The court explained that its "holding in Brignati was based on the universal nature of the probate process to which wills are uniquely subject;" it "was premised on the understanding that virtually every will in the Commonwealth is reviewed by a judge . . . and subject to a probate decree regarding its validity." Id. at 396-97. That was not true of trusts, "the property of which is often distributed without a formal declaration of the trust's validity by a court." Id. at 396. The court noted that "revocable trusts ha[d] become such popular will substitutes precisely because they typically remain[ed] out of probate, providing greater administrative ease and privacy." Id. "Unless a trust contest expressly is brought, there is no affirmative ruling on the validity of a revocable trust; in fact, usually no court ever sees a trust instrument." Id. at 396-97.

¶ 45.    For those reasons, the court concluded that the holding in Brignati did not apply to this case and it should not be extended to trusts. While "trusts are common will substitutes," they

22

are "not probated," and "would-be beneficiaries are far less likely to learn of their exclusion from a trust." Id. at 397. The court reasoned:

> While the law of wills and trusts may overlap considerably, with an understanding that both often serve a single testamentary objective, the lack of preemptive judicial review of trusts and of robust notice requirements for trust beneficiaries, where such review and notice are provided for wills, marks a significant difference between the two instruments and necessitates that we do not apply the reasoning in Brignati to a tort claim involving a trust.

Id. (citing Restatement (Third) of Torts: Liab. for Econ. Harm § 19 cmt. c ("A probate court . . . is the appropriate forum for determining whether a will is valid," but "is unable to provide a remedy for wrongful conduct in relation to a nonprobate transfer, such as a transfer by inter vivos trust" and "restitution or tort claim may be used to address those circumstances.")).

¶ 46. "Because an intentional interference with an expectancy claim inquired into one person's (harmful) effect on another—not one person's effect on the trust's validity—and because undue influence c[ould] support such a tort claim distinct from a contest in these circumstances," the court "conclude[d] that the intentional interference claim here [was] not subject to § 604's one-year deadline" but instead "to the three-year statute of limitations" for tort claims. Id.

¶ 47. I would engage in a similar analysis here. Like Massachusetts, the Vermont Trust Code is based on the UTC and it includes the same comments as those referenced above. The plaintiffs' claim here is not a "trust contest" challenging the validity of the trust. It is a claim against defendant personally for the harm that he allegedly inflicted on them.

¶ 48. The majority declines to draw a distinction between wills and trusts for purposes of an IIEI claim. In identifying policy rationales for the "probate exhaustion" requirement, it relies on cases that involve wills. See ante, ¶ 13. Those reasons make sense in the context of wills, but not in the context of trust transfers. The majority also cites an observation in the Restatement's Reporter's Note concerning restitution. See id. In that note, the Restatement explains that "the remedies furnished by [an IIEI claim] exist alongside the remedies provided by the law of

23

restitution," and "[t]he possibility of a claim in restitution does not make a claim for damages on the same facts less appropriate." Restatement (Third) of Torts: Liab. for Econ. Harm, § 19 Reporter's Note (f). It explains that, while "[t]he law of tort defers to the law of probate because probate is the creation of the legislature," the "law of tort does not defer to the law of restitution in the same way, however, because the two causes of action operate as similar judge-made devices to correct unjust allocations of gains and losses." Id. That observation is consistent with the nature of the IIEI claim set forth in the Restatement, and specifically, the provision that "[a] claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court." Id. § 19(2). It should not be read to undermine the Restatement's explicit recognition that a probate court "is unable to provide a remedy for wrongful conduct in relation to a nonprobate transfer, such as a transfer by inter vivos trust." Id. § 19 cmt. c.

¶ 49. In a similar vein, the UTC's reference to the probate division's "exclusive jurisdiction of proceedings . . . brought by a trustee or beneficiary concerning the administration of a trust" in 14A V.S.A. § 203(a) should not be read to conflict with the UTC's express direction that "[a]n action against a beneficiary or other person for intentional interference with an inheritance or gift" is not a trust contest. Id. § 604, official cmt. It is not clear from the undisputed facts that plaintiffs' "challenge to the trust amendment implicates the administration of the trust," ante, ¶ 16, as opposed to falling into the category of "other proceedings involving a trust" for which the probate court "has concurrent jurisdiction with other courts of this State," 14A V.S.A. § 203(b). As plaintiffs explain, they are not seeking to hold a trustee liable for misconduct or mishandling of trust assets in their capacity as a trustee, and the defendant tortfeasor in an IIEI action need not be a trustee at all. If the allegations here relate to "trust administration," it is difficult to see how a tort claim could ever be pursued in cases involving transfers by inter vivos trusts.

¶ 50. We did not squarely address this question in Collins v. Collins, 2017 VT 70, 205 Vt. 251, 173 A.3d 345, cited by the majority. Instead, we considered a wife's argument in a divorce

24

proceeding that her husband's motion to quash various subpoenas was error because this evidence would have showed that her father-in-law lacked the testamentary capacity to amend his trust. We reasoned that "even if the family division was a proper forum for making her claims," "the statute bar[red] wife's subpoena" for her father-in-law's testimony. Id. ¶ 14. In reaching our conclusion, we observed that the probate division, rather than the family division, was "[t]he appropriate forum" to challenge the grantor's "testamentary capacity to change his beneficiary." Id. ¶ 15. A grantor's testamentary capacity is specifically identified as an appropriate argument for a "trust contest" in the comment to § 604, and this type of claim clearly reflects a challenge to the validity of a trust amendment as against the world, not with respect to the harm to an individual. See 14A V.S.A. § 604, official cmt. (recognizing that "[a] trust can be contested on a variety of grounds," including "that no trust was created due to lack of intent to create a trust or lack of capacity"). As set forth above, the opposite is true for claims of IIEI, and I do not find Collins persuasive on the question of whether plaintiffs' claim here "implicates the administration of the trust." Ante, ¶ 16.

¶ 51.    Consistent with the guidance provided by the Restatement, the UTC, and persuasive authority from Massachusetts, I believe we should draw a distinction between trusts and wills for purposes of determining the viability of an IIEI claim. I would reverse the trial court's summary judgment decision in defendant's favor and I therefore respectfully dissent.

 

_____
Associate Justice

25